1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   THOMAS R. KAUFMAN, Cal. Bar No. 177936
2  tkaufman@sheppardmullin.com
   PAUL BERKOWITZ, Cal. Bar No. 251077
3  pberkowitz@sheppardmullin.com
   JASON P. BROWN, Cal. Bar No. 296688
4  jpbrown@sheppardmullin.com
   1901 Avenue of the Stars, Suite 1600
5  Los Angeles, California 90067-6055
   Telephone:  310.228.3700
6  Facsimile:   310.228.3701

7  Attorneys for Defendant
   WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE F. IBARRA, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>(Superior Court Case No. BC 654620)<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C §§ 1332, 1441 AND 1446 (CLASS ACTION FAIRNESS ACT OF 2005)**<br><br>Complaint Filed: March 17, 2017 |

**TO THE COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, Defendant Wells Fargo Bank, N.A. ("WFB"), hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of Los Angeles, to the United States District Court for the Central District of California. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. Accordingly, removal is proper based on the following grounds:

## BACKGROUND

1. On March 17, 2017, Patricia Barreras and Jacqueline Ibarra ("Plaintiff") – two former Wells Fargo Home Mortgage Consultants ("HMCs") – commenced a lawsuit in Los Angeles County Superior Court entitled, *Patricia Barreras and Jacqueline Ibarra v. Wells Fargo & Company*, Case No. BC654620 (hereinafter the "State Court Action"). A true and correct copy of the Complaint is attached as Exhibit "A."

2. Wells Fargo & Company is a California citizen that would destroy diversity if it was a proper defendant in this action. However, Wells Fargo & Company never employed Plaintiff. HMCs are employed by WFB, an entity Plaintiff did not even sue prior to her filing of an amended complaint. After counsel for the parties met and conferred about the fact that (1) WFB was the actual employer, and not Wells Fargo & Company; and (2) Patricia Barreras had signed an arbitration agreement agreeing to arbitrate individually her employment related claims, Plaintiff agreed to dismiss Barreras as a plaintiff and file a First Amended Complaint ("FAC") substituting WFB as the proper defendant for Wells Fargo & Company. That First Amended Complaint was filed in Los Angeles County

-1-

SMRH:483016790.1            NOTICE OF REMOVAL

1 | Superior Court on June 5, 2017. A true and correct copy of the FAC is attached as
2 | Exhibit "B"

3. In the FAC, Plaintiff alleges for the first time that **WFB** violated the California Labor Code as to a proposed class of HMCs by engaging in conduct including: (1) having an illegal policy that caused HMCs *never* to obtain compliant rest periods; (2) failing to pay HMCs minimum wages and overtime wages; (3) failing to pay all wages owed upon the termination of HMCs' employment; (4) failing to pay all wages owed every pay period; (5) failing to provide accurate wage statements; and (7) unfair competition.[1]

4. Wells Fargo filed an answer to the FAC in state court on June 8, 2017, a true and correct copy of which is attached as Exhibit "C."

## MINIMUM DIVERSITY EXISTS UNDER CAFA

5. The Court has original jurisdiction of this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2). Specifically, this action is removable, pursuant to the provisions of 28 U.S.C. §1441(a), as the amount in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which at least one class member is a citizen of a state different from that of at least one defendant.

6. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists – i.e., that one putative class member is a citizen of a different state from that of one defendant. 28 U.S.C. § 1332(d)(2); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement).

---

[1] FAC, p. 1. The Complaint refers generically to employees who "sell mortgages," most but not all of which would be HMCs. For purposes of this removal, the distinction between HMCs and other loan origination positions is not material.

Not only does minimal diversity exist, but complete diversity of citizenship exists because Plaintiff is a citizen of California, while WFB is a citizen of South Dakota.

7. Plaintiff Jacqueline Ibarra is, and at all times relevant to this action was, a resident of Los Angeles County, California where she worked for WFB. Residence is *prima facie* evidence of domicile. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Furthermore, Plaintiff alleges in the FAC that she is a "citizen of the State of California."[2] Plaintiff therefore is, or was at the date of filing this civil action, a citizen of California.

8. Pursuant to 28 U.S.C. § 1348, WFB, as a national banking association, is a citizen of the state where its main office is "located." WFB, with its main office located in Sioux Falls, South Dakota, is a citizen of South Dakota. *See Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 711 (9th Cir. 2014) (holding that "Wells Fargo is a citizen only of South Dakota, where its main office is located"). Accordingly, WFB is a citizen of only South Dakota and not California for diversity purposes. Thus, complete diversity exists here.

9. Thus, the minimum diversity requirement of the CAFA is satisfied here because a member of the plaintiff class is a citizen of a state different from WFB. 28 U.S.C. § 1332(d)(2)(A); *see Davis v. Chase Bank U.S.A.*, 453 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) (holding that minimal diversity exists where named plaintiff and defendant are citizens of different states).

10. Doe Defendants: Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe defendants 1-10, inclusive, does not deprive this Court of jurisdiction.

---

[2] FAC ¶ 3.

11.     This removal is timely in that it was filed within 30 days of the filing of a Complaint that named a defendant who created the basis for diversity jurisdiction and revealed this case was properly removable. 28 U.S.C. § 1446(b). Specifically, the case did not become removeable until Plaintiff filed her FAC on June 5, 2017.

## THE CAFA NUMEROSITY REQUIREMENT IS MET HERE

12.     With respect to the CAFA requirement of numerosity, Plaintiff alleges a putative consisting of "All current or former residents who worked for Defendant selling mortgages at any time beginning four (4) years prior to the filing of the Complaint through the date class notice is mailed to the class."[3] There are more than 4,000 current and former WFB employees who fall within that class definition. Accordingly, the numerosity requirement under the CAFA is satisfied as the putative class consists of more than 100 individuals. 28 U.S.C. § 1332(d)(5)(B).

## AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

13.     Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5 million. *See* 28 U.S.C. § 1332(d)(6). In the removal context, the assessment of whether the amount-in-controversy requirement is satisfied "is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). Rather, the appropriate measure of the jurisdictional amount in controversy is "the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint." *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994)). The amount in controversy is not determined by "the low end of an open-ended claim," but by "a reasonable reading of the value of the rights being

---

[3]     FAC ¶ 1.

litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993); *see also Hart v. Washington State Apple Advertising Commission*, 432 U.S. 333, 347 (1977). Moreover, when assessing the amount in controversy for purposes of the CAFA, the Senate Committee Report accompanying CAFA, S. Rep. No. 109-14, makes clear that 28 U.S.C. § 1332(d) should be "interpreted expansively." S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.[4]

14. **Plaintiff's Own Valuation of the Case Exceeds $5 million**: Although the FAC does not demand a specific amount of monetary relief from WFB, it is well-settled that "[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding that a settlement letter in which plaintiff demanded $100,000 in compensation was sufficient alone to satisfy $75,000 amount in controversy requirement for exercise of diversity jurisdiction); *Rodgers v. Travelers Prop. Cas. Co. of Am.*, 2008 WL 3992801, at *3 (D. Nev. Aug. 22, 2008) (denying plaintiff's motion for remand where settlement demand letter established jurisdictional amount in controversy); *Babcock v. ING Life Ins. and Annuity Co.*, 2012 WL 3862031 (E.D. Wash Sept. 5, 2012) (same). Moreover, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis*, 627 F.3d at 400.

15. Here, Plaintiff made a written settlement demand on May 11, 2017 in which she conducted an analysis of the potential exposure in the case, and estimated the value of the various class claims in the case as: (1) $24 million for the rest period claim, (2) $2.592 million for unpaid overtime, (3) $2.5 million for waiting time penalties, and (4) $20 million for Labor Code 204 penalties, suggesting class

---

[4] As stated in the CAFA Senate Report, "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42.

liability of more than **$49 million**. Furthermore, Plaintiff's letter assumed there were 1,000 putative class members, when the number is actually significantly higher than Plaintiff's estimate. Although WFB denies that there is any basis in law or fact for the claims alleged in Plaintiff's Complaint, such a large settlement demand makes clear that the amount in controversy easily exceeds $5 million. exclusive of interest and costs, as demonstrated below. *See* 28 U.S.C. § 1332(d)(6) ("the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000.").

16. **Reasonable Estimate From The Complaint.** Separate from the settlement letter, a reasonable evaluation of the amount in controversy of Plaintiff's asserted claims from the FAC shows that the amount in controversy easily exceeds the jurisdictional minimum.

17. Specifically, there are more than 4,000 putative class members who worked in California as loan originators from March 17, 2013 to the present and who worked in excess of 300,000 workweeks in the aggregate. Assuming that the average putative class member earned $70,000 per year ($33.65/hour), and Plaintiff is correct that WFB had an unlawful rest period policy that effectively deprived HMCs of rest periods every single workday (which WFB denies), the rest period liability for the class standing alone would exceed $20 million. Indeed, even if HMCs worked at minimum wage, the amount in controversy would exceed $5 million. Accordingly, even focusing just on that one claim, the amount in controversy requirement is easily met. Thus, there is "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). Moreover, these summary figures are conservative because they do not factor in the amount in controversy for Plaintiff's other claims, the claims for derivative penalties, or the amount of likely attorneys' fees, all of which may also be taken into account when determining the amount in controversy.

1 | *Galt G/S v. JSS Scandavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Accordingly, removal is proper as a matter of law. 28 U.S.C. § 1332(d).

## VENUE

18. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1441(a) because the county in which the State Court Action was pending is found within this District.

## NOTICE OF REMOVAL

19. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

20. In compliance with 28 U.S.C. § 1446(a), attached is a copy of the state-court papers served herein – the Summons and Complaint that was served on WFB **(Exhibit A),** the FAC **(Exhibit B)**, and WFB's Answer **(Exhibit C)**.

WHEREFORE, WFB removes to this Court the State Court Action brought by Plaintiff in the Superior Court of the State of California for the County of Los Angeles.

Dated: June 9, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Paul Berkowitz
THOMAS R. KAUFMAN
PAUL BERKOWITZ
JASON P. BROWN
Attorneys for Defendant
WELLS FARGO BANK, N.A.