UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE F. IBARRA, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendant. | No. CV 17-4344 PA (ASx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Following the filing, review, and consideration of the facts stipulated by the parties and the parties' Opening and Responsive Trial Briefs, their respective Proposed Findings of Fact and Conclusions of Law, and their responses to each other's Proposed Findings of Fact and Conclusions of Law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

. . . .

. . . .

## I. FINDINGS OF FACT

### A. Procedural Background

1. Plaintiff Jacqueline Ibarra's ("Plaintiff's") operative First Amended Complaint alleges various wage and hour violations under California state law by defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"). (Docket Nos. 1-2.)

2. The Court dismissed all claims except a claim for rest-period violations under California Labor Code section 226.7 and a derivative claim under California's Unfair Competition Law. (Docket Nos. 17, 18.)

3. The Court certified a class under Federal Rule of Civil Procedure 23(b)(3) of all non-exempt Wells Fargo employees who at any time during the period from March 17, 2013 to August 1, 2017 worked for Wells Fargo in California as a Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr.[1/] and were subject to common compensation plans. (Docket No. 18.)

4. On January 19, 2018, the Court granted Plaintiff summary judgment as to liability. (Docket No. 35.)[2/]

5. Thereafter, the parties agreed that "[t]he primary legal dispute will be over how to calculate 'one additional hour at the employees regular rate of compensation for each workday that [a rest] period is not provided,' which are the damages for a rest period violation specified in Labor Code § 226.7(c)." (Docket No. 38 at 2.)

### B. HMCs' Compensation

6. An HMC's pay was governed by compensation plans released each year, and the manner in which it was calculated remained the same during the relevant time. (See

---

[1/] The Court herein uses "HMC" to refer to California Wells Fargo employees working as any of Home Mortgage Consultant, Home Mortgage Consultant Jr., Private Mortgage Banker, or Private Mortgage Banker Jr.

[2/] The parties have agreed that facts previously stipulated for purposes of summary judgment remain applicable.

Stipulated Facts for Summary Judgment ("MSJ SF") #4-6, 10; <u>see also</u> MSJ SF Exs. A, B, Docket No. 25-1.)

7. Under the compensation plans, an HMC's total compensation consisted of (1) hourly pay; (2) incentive pay (including commissions) to the extent it exceeded hourly pay; and (3) overtime premiums. (MSJ SF #11, 12; <u>see</u> MSJ SF Exs. C-G.) The hourly pay generally was set at $12 per hour during the relevant time. (MSJ SF #13.)

8. The compensation plans provided that "all hourly pay and other paid time . . . is an advance against monthly commissions and Performance Scorecard Bonuses, and also against all incentives that Employee is otherwise eligible to earn under this Plan . . . . As such, Employee's hourly pay and other paid time is referred to as Advances on Commissions, and . . . Employee will be credited commissions and other incentives under this Plan only to the extent the gross received incentive amounts exceed the hourly pay the employee has received." (MSJ SF Ex. C at 2; <u>see</u> MSJ SF Exs. D-G; MSJ SF #14; <u>see also</u> MSJ SF #16, 23-31, 33-37; MSJ SF Exs. H, I.)

**C. <u>Damages Calculations</u>**

9. Defendant's liability to Plaintiff and the other class members under California Labor Code section 226.7 and California Business & Professions Code section 17200 is one additional hour of pay per workday for the number of shifts of productive time in excess of 3.5 hours during the class period ("qualifying work shifts"). (Stipulated Fact for Damages Trial ("Damages SF") #1, Docket No. 38.) Payroll and timekeeping data for class members indicates 1,880,003 qualifying work shifts. (Damages SF No. 2.)

10. Defendant contends that the "regular rate of compensation" for purposes of a rest-period violation is calculated by only including an employee's hourly rate (referred to on HMCs' itemized wage statements as the "regular pay" rate) attributable to each class member in the company payroll system during the day of each qualifying shift. (Damages SF #5.) If Defendant's position applies to determine damages, the resulting aggregate class-wide damages would be $24,472,114.36. (Damages SF No. 6.)

. . . .

11. Plaintiff contends that the "regular rate of compensation" is derived by adding all forms of qualifying compensation (including commissions and other non-discretionary pay) earned during the pay period, and dividing that sum by the total hours worked during the pay period. (Damages SF #7.) If Plaintiff's position applies, the resulting damages would be $97,284,817.91. (Damages SF #8.)

12. Defendant contends, but Plaintiff disputes, that the class-wide damages should be reduced due to class members who never earned any commissions or other non-discretionary pay beyond the hourly rate. (Damages SF #9.) Defendant's expert has identified 961 of the 4,481 class members falling into this group because Defendant contends the payroll records reflect that the only compensation these employees ever received was hourly pay. (Id.) If the qualifying work shifts of those 961 class members do not generate any damages, the resulting class-wide damages figures would be reduced to either $22,622,807.27 or $95,435,510.81, depending on whether Defendant's legal theory or Plaintiff's legal theory for how to calculate damages is adopted. (Damages SF #10.)[3]

## II. CONCLUSIONS OF LAW

1. Under California law, "[a]n employer shall not require an employee to work during a . . . rest . . . period mandated pursuant to . . . an applicable . . . order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7(b). The relevant IWC wage order requires employers to "authorize and permit all employees to take rest periods . . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." IWC Wage Order 4-2001 § 12(A), Cal. Code Regs. tit. 8, § 11040(12)(A).

---

[3] The sole purpose of the parties' experts was to analyze potential class-wide damages. (Damages SF #11.) The parties agree that because they stipulated to the above potential figures for class-wide damages ($22,622,807.27; $24,472,114.36; $95,435,510.81; or $97,284,817.91), there is no need for other expert evidence. (See id.)

2. Defendant's HMC compensation system violates section 226.7, the wage order, and the Unfair Competition Law for the reasons stated in the Court's summary judgment order (Docket No. 35), which is incorporated here by reference.

3. "If an employer fails to provide an employee a . . . rest . . . period[,] . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the . . . rest . . . period is not provided." Cal. Lab. Code § 226.7(c); <u>see also</u> IWC Wage Order 4-2001 § 12(B).

**A.     What Is The "Regular Rate of Compensation"**

4. The Court concludes that the "regular rate of compensation" for class members is not limited to HMCs' hourly rate but rather must include other forms of qualifying compensation.

5. The Court begins with language of section 226.7 because a statute's words "generally provide the most reliable indicator of legislative intent. If the statutory language is clear and unambiguous[, the] inquiry ends. If there is no ambiguity in the language, [courts] presume the Legislature meant what it said and the plain meaning of the statute governs." <u>Murphy v. Kenneth Cole Prods., Inc.</u>, 155 P.3d 284, 289-97 (Cal. 2007) (citation omitted) (internal quotation marks omitted).

6. HMCs' normal compensation was not comprised solely or even primarily of pay calculated at an hourly rate. By definition, it included hourly pay, incentive pay, and overtime premiums, and the hourly pay was stated to be only an advance on commissions. As explained in the Court's summary judgment order, HMCs could receive compensation based on commissions such that the hourly rate was essentially irrelevant. HMCs who received only the hourly pay had to pay back deficits between the hourly pay and their commissions until the deficits were erased, at which time those HMCs would receive commission-based compensation. (<u>See</u> Docket No. 35 at 2-5, 8-10.) Indeed, less than a quarter of class members (961 of the 4,481 class members) received only hourly pay. The Court is not persuaded that the "regular rate of compensation" for all class members should be an hourly rate that did not actually determine the compensation received by most of the

-5-

1 | class members. See Murphy, 155 P.3d at 289 ("In reading statutes, we are mindful that words are to be given their plain and commonsense meaning." (citing Lungren v. Deukmejian, 755 P.2d 299 (Cal. 1988))); see also Alvarado v. Dart Container Corp. of Cal., 411 P.3d 528, 539 (Cal. 2018) (construing "regular rate of pay" in Labor Code section 510 and noting that in accordance with "the plain meaning of the phrase," "an employee's regular rate of pay changes from pay period to pay period depending on whether the employee has earned shift differential premiums or nonhourly compensation. Therefore, the word 'regular' in this context does not mean 'constant.'").

7. This conclusion is not undermined by the different language used in Labor Code sections 226.7 and 510. See Rashidi v. Moser, 339 P.3d 344, 348-49 (Cal. 2014) ("Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning." (quoting Campbell v. Zolin, 39 Cal. Rptr. 2d 348, 353 (Ct. App. 1995))).

8. Labor Code section 510(a) requires that employers compensate employees for overtime work at a multiple of "the regular rate of pay for an employee." "[A]n employee's 'regular rate of pay' for purposes of Labor Code section 510 . . . is not the same as the employee's straight time rate (i.e., his or her normal hourly wage rate). Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned." Alvarado, 411 P.3d at 539.

9. Similar language to Labor Code section 510 is used in the federal Fair Labor Standards Act ("FLSA"), which requires that an employee working overtime "receive[] compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The FLSA defines "regular rate" as "all remuneration for employment paid to, or on behalf of, the employee" subject to certain exemptions. Id. § 207(e). "When defining the term 'regular rate of pay,' California courts look to the

. . . .

FLSA." Culley v. Lincare Inc., 236 F. Supp. 3d 1184, 1190 (E.D. Cal. 2017) (citing Advanced-Tech Sec. Servs., Inc. v. Superior Court, 77 Cal. Rptr. 3d 757 (Ct. App. 2008)).

10. Several district courts in California have ruled that section 226.7's "regular rate of compensation" is not the same as section 510's "regular rate of pay." See Brum v. MarketSource, Inc., 2:17-cv-241-JAM-EFB, 2017 WL 2633414, at *3-5 (E.D. Cal. June 19, 2017); Wert v. U.S. Bancorp, No. 13-cv-3130-BAS (BLM), 2014 WL 7330891, at *3-5 (S.D. Cal. Dec. 18, 2014), reconsideration denied, 2015 WL 3617165 (S.D. Cal. June 9, 2015); Bradescu v. Hillstone Rest. Grp., Inc., No. SACV 13-1289-GW (RZx), 2014 WL 5312546, at *7-8 (C.D. Cal. Sept. 8, 2014), tentative ruling confirmed as final, 2014 WL 5312574 (C.D. Cal. Oct. 10, 2014). Those Courts generally found the varying wording ("compensation" in section 226.7 and "pay" in section 510) to be significant, and they concluded that section 226.7's "regular rate" should not include things like commissions, incentive pay, or non-discretionary bonuses. See Brum, 2017 WL 2633414, at *3-5; Wert, 2014 WL 7330891, at *4-5; Bradescu, 2014 WL 5312546, at *7-8.

11. One court in this district held that section 226.7 does have the same "regular rate" as section 510, as interpreted in light of the FLSA. See Studley v. All. Healthcare Servs., Inc., No. SACV 10-00067-CJC(ANx), 2012 WL 12286522, at *4 (C.D. Cal. July 26, 2012). That court reasoned that section 226.7 rest-period payments are premium wages similar to overtime pay. Id.; see Murphy, 155 P.3d at 289-97. The court noted that the statutes both include "regular rate" and that "pay" and "compensation" are synonymous. Studley, 2012 WL 12286522, at *4. The court thus concluded that the section 226.7 "regular rate" was not limited to the employee's base compensation rate but also included on-call pay and referral bonuses. See id. That analysis was rejected without explanation in Wert, see 2015 WL 3617165, at *3 n.3, and was discounted in Brum for "fail[ing] to address the difference in language between 'regular rate of compensation' and 'regular rate of pay,'" Brum, 2017 WL 2633414, at *5.

12. This Court does not find that a comparison to section to 510 or the FLSA is necessary in resolving the issue. Whether or not section 226.7 uses the same "regular rate"

as section 510 and/or the FLSA in all cases, the Court is not persuaded that in this case, section 226.7's "regular rate" should be an hourly rate at which HMCs generally were not, and apparently were not intended to be, paid. See Murphy, 155 P.3d at 289 ("Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation." (citing People v. Jefferson, 980 P.2d 441 (Cal. 1999))).

13. To the extent those other statutes are relevant here, they support interpreting "regular rate of compensation" as not limited to HMCs' hourly rate. The Court disagrees with Brum, Bradescu, and Wert to the extent they are inconsistent with this conclusion, although none of those cases addressed a compensation system comparable to Defendant's. First, "compensation" and "pay" generally have the same meaning in common usage and in California law. See Compensation, Merriam-Webster, https://www.merriam-webster.com/dictionary/compensation (defining "compensation" as, among other things, "payment, remuneration"); Pay, Merriam-Webster, https://www.merriam-webster.com/dictionary/pay (defining "pay" as, among other things, "something paid for a purpose and especially as a salary or wage: remuneration"); Studley, 2012 WL 12286522, at *4 n.4 ("[C]ompensation and pay have essentially identical plain meanings for purposes of the labor code. Thus, the use of one word or the other does not substantively alter the meaning of the phrase."); Murphy, 155 P.3d at 290 n.6 ("[T]he Legislature has frequently used the words 'pay' or 'compensation' in the Labor Code as synonyms for 'wages.'"). The frequently interchangeable use of the words does not necessarily mean that the choice of words should be ignored here, but it may indicate that no distinction was intended.

14. Moreover, although section 226.7 uses "compensation" and section 510 uses "pay," both include "regular rate." See Studley, 2012 WL 12286522, at *4 n.4 (rejecting argument that different rates were intended "because it overlooks the fact that the operative word or phrase in each section is not 'compensation' or 'pay' but rather 'regular rate'"). The FLSA, which California courts look to for guidance, uses neither "pay" nor "compensation."

Instead, it uses the phrase "regular rate at which [the employee] is employed," and it defines only the term "regular rate." 29 U.S.C. § 207(a), (e). "A principle of statutory construction states the Legislature is deemed to be aware of existing statutes and judicial decisions when it adopts a statute." Gutierrez v. Carmax Auto Superstores Cal., 228 Cal. Rptr. 3d 699, 715-16 (Ct. App. 2018) (citing People v. Harrison, 768 P.2d 1078 (Cal. 1989)). Thus, the use of "regular rate" in section 226.7 also could suggest that the California Legislature did not intend for a different rate from section 510 or the FLSA.

15. Legislative history does not clearly establish a different intent. As it was first introduced, the bill that created section 226.7 provided for payment to the employee "of an amount equal to twice his or her average hourly rate of compensation for the full length of the meal or rest periods during which the employee was required to perform any work." (Pl.'s Request for Judicial Notice ("RJN") Ex. 1 at 4-5, 20-21, Docket No. 42-1.)[4] The bill later was revised to provide, as the statute does now, for the payment of "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." (Pl.'s RJN Ex. 2 at 4, 22-23.) The change from measurement at an hourly rate to the "regular rate" could suggest that the "regular rate" was not meant to be limited to the hourly rate. See Berry v. Am. Express Publ'g, Inc., 54 Cal. Rptr. 3d 91, 95 (Ct. App. 2007) ("The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision. . . . Thus, courts must not interpret a statute to include terms the Legislature deleted from earlier drafts." (internal quotation marks omitted)). On the other hand, there is some indication that the change was made only to

---

[4] Plaintiff requests that the Court take judicial notice of two versions of the bill, a state Superior Court statement of decision, and materials from the Department of Industrial Relations's Division of Labor Standards Enforcement. (See Pl.'s RJN.) Defendant does not argue that judicial notice is inappropriate but contends that the statement of decision is irrelevant because it is not citeable precedent. (Docket No. 44 at 6 n.1.) Plaintiff's request is granted. See, e.g., Louis v. McCormick & Schmick Rest. Grp., 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal. 2006) ("Under Rule 201 of the Federal Rules of Evidence, the court may take judicial notice of the records of state courts, the legislative history of state statutes, and the records of state administrative agencies." (collecting cases)).

conform the statute to existing language in IWC wage orders. See Murphy, 155 P.3d at 292 (discussing legislative commentary). Section 226.7's legislative history therefore does not clearly support either side.

16. The Court is not persuaded by Defendant's arguments that including more than HMCs' hourly rate in section 226.7's "regular rate" would create administrative difficulties or that the size of Plaintiff's requested damages award makes it inequitable. (See Docket No. 40 at 15-16, 19-21.) Those considerations do not override the statute's language. Additionally, a more comprehensive calculation of the rest-period violation rate should not be prohibitively difficult, and the Court expresses no opinion on other ways in which Defendant could structure its compensation system. However, as an example, FLSA regulations on overtime pay detail how employers may calculate the "regular rate" when using commission-based compensation. See 29 C.F.R. §§ 778.109, 117-22.

17. Finally, the Court's application of section 226.7 in this case comports with the California Supreme Court's instruction that "the state's labor laws are to be liberally construed in favor of worker protection." Alvarado, 411 P.3d at 539 ("[I]n deciding how to factor a flat sum bonus into an employee's overtime pay rate, we are obligated to prefer an interpretation . . . that favors the protection of the employee's interests."); see Murphy, 155 P.3d at 289. It also recognizes that Defendant's violation of section 226.7 is not a mere "technical violation" as Defendant suggests (see Docket No. 44 at 11) but instead relates to an important component of the Labor Law. See Vaquero v. Stoneledge Furniture LLC, 214 Cal. Rptr. 3d 661, 670 (Ct. App. 2017) ("[T]he Legislature views the right to a rest period as so sacrosanct that it is unwaivable. Compensation plans that do not compensate employees directly for rest periods undermine this protective policy by discouraging employees from taking rest breaks." (citations omitted)).

**B.     Whether Class Damages Should Be Reduced For HMCs Who Earned Only Hourly Pay**

18. According to Plaintiff, Defendant's assertion that some HMCs did not trigger section 226.7 rest-period payments is an improper attempt to relitigate liability (Docket No.

42 at 18; Docket No. 46 at 20-21). The Court disagrees. Defendant merely seeks to limit damages. See, e.g., Ayala v. U.S. Xpress Enters., Inc., No. EDCV 16-137-GW(KKx), 2017 WL 3328087, at *8 (C.D. Cal. July 27, 2017) (stating that "Plaintiff must only prove that Defendants' per mile pay scale does not adequately compensate class members for all the tasks they perform. Plaintiff will not need to prove that any individual employee was ever paid less than minimum wage in a given hour . . . . The only individual inquiries necessary will concern the exact amount of non-compensated work performed by each class member, and will thus relate only [to] damages, and not liability." (citing Leyva v. Medline Indus. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013))).

19. Defendant's challenge is not foreclosed by the Court's summary judgment order. There, the Court addressed only whether Defendant's compensation system as a general matter complied with the law. The Court did not consider whether every individual class member was inadequately compensated for missed rest periods.

20. Nonetheless, the Court concludes that class damages should not be reduced because 961 of the 4,481 class members received only hourly pay. As explained in the Court's summary judgment order, in addition to other deficiencies, Defendant's compensation system violated section 226.7 because HMCs who received only hourly pay accrued a deficit that eventually reduced the commissions they would be paid. Those HMCs ultimately reimbursed Defendant at least some portion of the hourly pay, which included rest-period payments, through later-earned incentives. (See Docket No. 35 at 8-10.) While an HMC who never qualified for any incentive might have been compensated for missed rest periods, Defendant fails to establish how many, if any, such HMCs there were. Accordingly, Defendant has failed to prove that a reduction in damages is warranted.

**C. Damages Award**

21. Because the Court concludes that section 226.7's "regular rate of compensation" is not limited to HMCs' hourly rate and that no reduction is warranted for HMCs who earned only hourly pay, Plaintiff and the other class members are entitled to $97,284,817.91 in damages.

22. Defendant argues that prejudgment interest is not available in this action. (Docket No. 40 at 6, 23-25.) Plaintiff responds that she is not seeking interest. (Docket No. 46 at 21 n.2; see Docket No. 47 at 9-10.) The Court agrees that prejudgment interest is not available in this case. See Culley, 236 F. Supp. 3d at 1196.

23. Defendant also argues that a separate award of attorneys' fees is not available in this action. (Docket No. 40 at 6, 23-25.) The Court declines to address issues related to attorneys' fees in the absence of a formal claim for them.

### Conclusion

Plaintiff and the other class members are entitled to $97,284,817.91 in damages. The Court will issue a Judgment consistent with these Findings of Fact and Conclusions of Law. The Court will issue a separate order with the deadlines and procedures for the filing of a motion for attorneys' fees.

DATED: May 8, 2018

Percy Anderson
UNITED STATES DISTRICT JUDGE