Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Graham G. Lambert, Esq. SBN 303056
(gl@haffnerlawyers.com)
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2325
Los Angeles, California 90017
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Paul Stevens, SBN 207107
(pstevens@stevenslc.com)
**STEVENS LC**
700 S. Flower Street, Suite 660
Los Angeles, California 90017
Telephone: (213) 270-1211
Facsimile: (213) 270-1223

Attorneys for Plaintiffs JACQUELINE
IBARRA, and the CERTIFIED CLASS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE F. IBARRA, an individual on behalf of herself and all other similarly situated, | Case No.: CV 17-04344-PA (ASx) |
| | Judge: Hon. Percy Anderson |
| Plaintiff, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS AND AWARDING CLASS REPRESENTATIVE SERVICE AWARD** |
| vs. | |
| WELLS FARGO BANK, NA.; and DOES 1 through 50, inclusive, | |
| Defendants. | Date:     July 16, 2018 |
| | Time:     1:30 p.m. |
| | Crtrm:    9A |

## <u>NOTICE OF MOTION AND MOTION</u>

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that on July 16, 2018, at 1:30 p.m. or as soon as it may be heard, in Courtroom 9A of the above entitled Court, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Plaintiff and Class Counsel in this action will move, and hereby does move, for an Order:

(a) Awarding Class Counsel attorneys' fees in the amount of $24,321,204.00, which constitutes 25% of the common fund judgment obtained for the Class;

(b) Awarding Class Counsel reimbursement of their reasonable expenses in the amount of $62,214.50, to be paid from the judgment; and

(c) Awarding class representative Jaqueline Ibarra a service award in the amount of $100,000.00.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Paul D. Stevens, Joshua H. Haffner and Jacqueline Ibarra, any further argument made in connection with this motion, and the pleadings, files, and evidentiary record in this case.

Respectfully submitted.

DATED: June 18, 2018                **HAFFNER LAW PC**
                                    By:  /s/ Joshua H. Haffner
                                        Joshua H. Haffner
                                        Graham G. Lambert

DATED: June 18, 2018                **STEVENS, LC**
                                    By:   /s/ Paul D. Stevens
                                        Paul D. Stevens
                                        Attorneys for Plaintiff

# **TABLE OF CONTENTS**

I.     INTRODUCTION………………………………………………. …1

II.    FACTUAL BACKGROUND……………………………………... …2

III.   ATTORNEYS' FEES SHOULD BE AWARDED
       AT THE BENCHMARK…………………………………………2

      A.    Legal Standard…………..…………………………………2

      B.    Class Counsel Is Entitled to An Award
          of Attorneys' Fees Under the Common Fund Doctrine……………3

      C.    The Court Should Use A Percentage Of The Recovery
          Method For Awarding Attorney's Fees……………………………4

      D.    Class Counsel's Request of 25% of the Common Fund
          is Presumptively Reasonable……………………………………...5

      E.    All Factors Confirm A 25% Fee Award Is Appropriate…………...5

          1.    A 25% Fee Is Justified by The Exceptional Results………....6

          2.    The Case Carried Substantial Risks………………………..8

          3.    The Quality, Skill and Efficiency of Class Counsel………..8

          4.    The Contingent Nature of the Fee…………………………9

          5.    The 25% Benchmark Is Fair And Reasonable To
              The Absent Class Members.  It Is Below What
              An Individual Class Member Would Pay In A
              Standard Contingency Fee Agreement…….……………11

          6.    Comparison to Awards in Other Cases
              Demonstrates the Fee Requested is Reasonable …………12

          7.    There Is No Reason to Deviate From The 25%
              Benchmark…………………………………………...14

F.   The Lodestar-Multiplier "Cross-Check" Is Discretionary
     And Need Not Be Applied……………………………………….................16

G.   If The Court Exercises Its Discretion To Perform A Lodestar
     Cross-Check, That Analysis Confirms The Reasonableness Of
     Class Counsel's 25% Benchmark Fee Request…………………………...17

     1.   The Time And Labor Required  ..……………………………………19

     2.   The Requested Fee Is Reasonable When Compared
          To Fees In Similar Litigation Litigation…………………………...21

     3.   The Preclusion of Other Employment Due To The Case…………22

IV.  Class Counsel's Litigation Costs Should Be Reimbursed…… ..…….   23

V.   The Requested Service Award Is Reasonable and Appropriate……..   23

VI.  CONCLUSION……………………………………………………………   24

# TABLE OF AUTHORITIES

## Federal Cases

*Aarons v. BMW of N. Am.*,
2014 U.S. Dist. LEXIS 118442 (C.D. Cal. 2014) .................................................. 19

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 23

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................ 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ............................................................................................ 3, 11

*Campbell v. Best Buy Stores, L.P.*,
No. 2016 WL 6662719 (C.D. Cal. 2016) ............................................................... 19

*Ching v. Siemens Indus.*,
2014 WL 2926210 (N.D.Cal. 2014) ......................................................................... 9

*Craft v. County of San Bernadino*,
2624 F.Supp.2d 1113 (C.D. Cal. 2008) .................................................................. 16

*Dynabursky v. Alliedbarton Security Services, LP*,
2016 WL 8921915 (C.D.Cal. 2016) ......................................................................... 7

*Fernandez v. Victoria Secret Stores LLC*,
2008 WL 8150856 (C.D. Cal. 2008). ...................................................................... 18

*Fischel v. Equitable Life Assur. Soc.*,
307 F3d 997 (9th Cir 2002) ...................................................................................... 3

*Glass v. UBS Fin. Servs.*,
2007 WL 221862 (N.D.Cal. 2007) ........................................... 6, 13-14, 17, 21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................ 18

*In re Bluetooth Headset Products Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................... 1, 4-6, 14-16

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................................... 23

*In Re National Collegiate Athletic Association Grant-in-Aid Cap Antitrust Litigation*,
2017 WL 6040065 (N.D. Cal. 2017) ............................... 5, 8, 10, 12, 15-16, 21

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir.1998) ........................................................................... 14-15

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Prct, And Prod. Liab. Litigation*,
MDL No. 2672, Dckt 3053, 3/17/17, 8:1-8 (N.D. Cal. May 17, 2017) .................. 20

*In re Washington Pub. Power Supply*,
  19 F.3d 1291 (9th Cir. 1994) .................................................................. 10

*Kearney v. Hyundai Motor Am.*,
  2013 U.S. Dist. LEXIS 91636 (C.D. Cal. 2013) ...................................... 19

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir.1975) ................................................................ 18, 21

*Klein v. City of Laguna Beach*,
  810 F.3d 693 (9th Cir. 2016) ...................................................................3

*Ladore v. Ecolab, Inc.*,
  2013 WL 12246339 (C.D. Cal. 2013) ...................................................... 16

*Lopez v. Youngblood*,
  2011 WL 10483569 (E.D.Cal. 2011)........................................................ 17

*Mashburn v. National Healthcare*,
  684 F.Supp. 679 (M.D. Ala. 1988) .......................................................... 21

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009) ..................................................................6

*Nguyen v. Wells Fargo Bank, N.A.*,
  2016 U.S. Dist. LEXIS 131710 ................................................................8

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ............................................................ 3, 11

*Roberti v. OSI Systems, Inc.*,
  2015 WL 8329916 (C.D.Cal 2015) .......................................................... 19

*Sapper v. Lenco Blade, Inc.*,
  704 F.2d 1069, 1073 (9th Cir. 1983) ....................................................... 18

*Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.*,
  2005 WL 1213926 (E.D.Penn. 2005) ...................................................... 21

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995)........................................................... 23

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .........................................4-5, 7-10, 12-14, 16-17, 21

- iv -

## State Cases

*Amaral v. Cintas Corp.,*
   163 Cal. App. 4th. 1157 (2008) ................................................................ 22

*Chavez v. Netflix, Inc.,*
   162 Cal. App. 4th. 43 (2008) ............................................................ 5, 12, 22

*Graham v. DaimlerChrysler Corp,*
   34 Cal.4th 553 (2004) ............................................................................9

*In RE Cellphone Termination Cases,*
   186 Cal.App.4th 1380 (2010). ................................................................3

*Ketchum v. Moses,*
   24 Cal.4th 1122 (2001). ...................................................................... 19

*Laffitte v. Robert Half International, Inc.,*
   1 Cal 5th 480 (2016) .........................................3-5, 11-12, 14, 17, 19, 22

*Lealao v. Beneficial Cal., Inc.,*
   82 Cal. App.4th 19 (2000) .......................................................... 4, 15-16, 22

*Serrano v. Priest,*
   20 Cal. 3d 25 (1977) .............................................................................3

*Vaquero v. Stoneledge Furniture, LLC,*
   9 Cal.App.5th 98 (2017) ....................................................................... 8

## Rules and Statutes

*Cal. Code Regs., Title 8, § 11040, 4-2001(12)(A)* .................................... 11

*California Labor Code §226.7* ................................................................. 2, 11

*California Business & Professions Code §17200* .................................. 2, 11

*Fed. R. Civ. P. 23(h)* ...............................................................................2

## Other Authorities

*Manual for Complex Litigation* (4th Ed. §14.121 2004) ..............................4

*5 Newberg on Class Actions § 15:83* (5th ed.) .......................................... 14

*Posner, Economic Analysis of Law* (4th ed. 1992) .................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Class Counsel respectfully submit that an award of attorneys' fees at the Ninth Circuit's 25% "benchmark", and the service award requested, are appropriate.

The Ninth Circuit has instructed that in considering an award of attorneys' fees in a common fund case, the "foremost" consideration is the benefit to the class.  In re Bluetooth Headset Prods. Liab. Lit., 654 F.3d 935, 942 (9th Cir. 2011).  This case is exceptional in terms of the benefits to the class achieved, and the speed and efficiency in which it was done.  Indeed, Class counsel has been unable to find a comparable matter that litigated through trial in the exceptionally efficient manner this case did and resulted in such a large class benefit.  In achieving this result, Class counsel did the following:

- Navigated past what could have been death knell issues (e.g. the existence of arbitration agreements and a prior decision in Wells Fargo's favor).

- Litigated through trial to obtain the maximum recovery possible for class members, a common fund of $97,284,817.91.

- The amount awarded ($97 million) was not just a result of the size of the class, but was attributable primarily to Class counsel prevailing on their damages theory, which was an unsettled area of law at time of trial but resulted in 4.3 times the amount of damages asserted by Wells Fargo ($22,622,807.27), and an additional $74,662,010.64 to the Class.

- Obtained significant individual recoveries - $21,710.51 average amongst all class members, more than 700 class members will receive $40,000 or more.

- Obtained additional significant benefits in addition to the monetary judgment in that this action caused Wells Fargo to change its compensation plan to compensate for rest break time, which will apply to all future employees.

- Class counsel achieved these results in significantly less time than a typical class action - within 12 months of its removal to federal court.

Based on the foregoing, Class counsel respectfully submit that an award of attorneys' fees in an amount at the Ninth Circuit's benchmark of 25% of the common fund is appropriate and that no special circumstances warrant deviating from that amount.   Class counsel also respectfully submit that the requested incentive payment for the named Class representative, Jacqueline Ibarra, is also justified in this case, given the assistance Ms. Ibarra provided to the case, the results achieved and the very real reputational risk she took on. Accordingly, for the reasons set forth herein, Plaintiff and Class Counsel respectfully request that the Court grant this motion.

## II.   FACTUAL BACKGROUND

As the Court is aware, this is a class action on behalf of 4,481 mortgage brokers for rest break violations under Labor Code § 226.7 and Business & Professions Code §17200.  (Declaration of Paul D. Stevens, Esq., at ¶19(m)).

The case was initially filed in Los Angeles Superior Court on March 17, 2017. (Dckt No., 1.)  A First Amended Complaint was filed on June 5, 2017, adding Defendant to the case. Id. The case was removed to this Court on June 12, 2017. Id.

As set forth in detail in the Declarations of Paul D. Stevens and Joshua H. Haffner, the prosecution of this case was the epitome of a focused, results-based approach (and outcome).  (Stevens Decl., ¶¶ 19, 20; and Haffner Decl., ¶¶11-12.)  On each issue and at each juncture, counsel prosecuted this matter in a skilled and streamlined manner to a full, uncompromised judgment and 100% recovery.

## III.   ATTORNEYS' FEES SHOULD BE AWARDED AT THE BENCHMARK

This is a truly unique matter.  It is a class action litigated through trial, obtaining the maximum result, in an amount over 4 times what the Defendant claimed was available in damages, and a change in future behavior, accomplished in approximately one (1) year time.  Based thereon, this case meets the criteria for the 25% benchmark.

### A.   Legal Standard

In a certified class action, Courts may award reasonable attorney's fees and nontaxable costs that are authorized by law. Fed. R. Civ. P. 23(h).

The Class claims in this case were based on California law.  Therefore, this motion for attorneys' fees is governed by California law.  <u>Klein v. City of Laguna Beach</u>, 810 F.3d 693, 701 (9th Cir. 2016). The Court, however, may look to Ninth Circuit and other consistent federal precedent in determining the appropriate fee.  <u>In RE Cellphone Termination Cases</u>, 186 Cal.App.4th 1380, n.18 (2010).

**B.     Class Counsel Is Entitled to An Award of Attorneys' Fees Under the Common Fund Doctrine.**

California and the Ninth Circuit recognize that "[w]hen counsel recover a common fund which confers a 'substantial benefit' upon a class of beneficiaries, counsel have an equitable right to be compensated for their successful efforts in creating a common fund." <u>Fishel v. Equitable Life Assur. Society of U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002); <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 35-38 (1977).

The purpose of the common fund doctrine is to avoid unjust enrichment by requiring those who benefit from the efforts of the litigants and their counsel to pay their fair share of fees and costs incurred. <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 271 (9th Cir. 1989); and <u>Laffitte v. Robert Half Internat., Inc.</u>, 1 Cal. 5th 480, 503 (2016).  Thus, the Supreme Court has stated that attorneys' fees sought under a common fund theory should be assessed against every class members' share. <u>Boeing Co. v. Van Gemert</u>, 444 U.S. 472, 480 (1980).   The common fund doctrine is properly applied if "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." <u>Graulty</u>, <u>supra</u>, 886 F.2d at 271.  These criteria are met in this case.

Here, Class Counsel achieved a common fund of $97,284,817.91 that will benefit the named Plaintiff and every Class member.   Each Class member has a mathematically ascertainable claim to part of the common fund recovered on their behalf.   None have paid attorneys' fees to Class counsel for their efforts.  Thus, Class counsel are equitably entitled to an award of attorneys' fees from the common fund.

\\\\

## C. The Court Should Use A Percentage Of The Recovery Method For Awarding Attorney's Fees.

Both California and the Ninth Circuit have approved two different methods for calculating a reasonable award of attorneys' fee, depending on the circumstances. See In re Bluetooth, supra, 654 F.3d at 941; see also Laffitte, supra, 1 Cal. 5th at 489.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. Bluetooth, supra, 654 F.3d at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. The California Supreme Court has also articulated that common fund percentage fee awards "more accurately reflect the results achieved." Laffitte, supra, 1 Cal.5th 480, 489-90 (2016). "Courts agree that because the percentage-of-the-benefit approach is result-oriented rather than process oriented, it better approximates the workings of the marketplace' than the lodestar approach." Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 24 (2000).[1]

Thus, while courts have discretion to use either method, **use of the percentage method in common fund cases appears to be dominant**" and "**the primary basis . . . remains the percentage method**." Vizcaino v. Microsoft Corp., 290 F. 3d 1043, 1047 (9th Cir. 2002)(emphasis added). Based thereon, Class Counsel respectfully submits that the Court should use a percentage of the recovery method for awarding an attorneys' fee in this matter.

\\\\

---

[1] The Ninth Circuit has also stated "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee." Vizcaino, supra, 290 F.3d at 1050. See also Manual for Complex Litigation 4th Ed. §14.121 (2004) ("in practice, the lodestar method is …inconsistent in result, …capable of manipulation, …[and] creates inherent incentive to prolong the litigation").

**D.**     **Class Counsel's Request of 25% of the Common Fund is Presumptively Reasonable.**

The Ninth Circuit has established "25 percent of the fund as the benchmark for a reasonable fee award" in common fund cases." In Re Bluetooth, supra, 654 F.3d at 942; In Re National Collegiate Athletic Association Grant-in-Aid Cap Antitrust Litigation, ("In Re NCAA") 2017 WL 6040065, *2 (N.D. Cal. 2017)(the 25% benchmark is "presumptively reasonable.").   Moreover, while the Ninth Circuit has generally established 25% of a common fund as the "benchmark" award for attorney fees, Vizcaino, supra, 290 F.3d at 1043, it has also held that benchmark is only the starting point for the analysis and that the exact percentage to be awarded varies based on the facts of the case but that "**in most common fund cases, the award exceeds that benchmark**." In Re NCAA, supra, 2017 WL 6040065 at *2 (emphasis added).   Finally, a 25 percent fee is within the range typically awarded by California state courts. See Laffitte, supra, 1 Cal. 5th 480 (the California Supreme Court recently affirmed percentage awards for attorney fees from common funds, and then upheld a **33.33%** attorney fee award from the common fund in a wage and hour class action); see also Chavez v. Netflix, Inc. 162 Cal. App. 4th 43, 66 n.11 (2008) ("**fee awards in class actions average around one-third of the recovery**").

**E.**     **All Factors Confirm A 25% Fee Award Is Appropriate.**

The Ninth Circuit has directed that while the 25% benchmark is the starting point for analysis, courts should consider all the circumstances of the case in confirming the "benchmark" or other appropriate percentage.   Vizcaino, supra, 290 F.3d at 1048. Factors recognized by the Ninth Circuit are the following: (i) the results obtained for the class, including whether counsel's performance generated benefits beyond the cash settlement fund; (ii) the risk undertaken by counsel; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee; and (v) the market rate, awards in similar cases. Id.   As set forth below, these factors support an award at the 25% benchmark.

\\\\

- 5 -

### 1.    A 25% Fee Is Justified by The Exceptional Results.

The "benefit obtained for the class" is considered the "foremost" consideration in determining the appropriate fee in a common fund case. In re Bluetooth, supra, 654 F.3d at 942. Thus, ultimately the reasonableness of the fee "is determined primarily by reference to the *level of success* achieved by the plaintiff." McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009) (emphasis added).  Indeed, the Ninth Circuit has held that the relevant circumstances that could justify an *upward* departure from the 25 percent benchmark include the achievement of "exceptional results" for the class. Glass v. UBS Financial Services, Inc., 2007 WL 221862, *16 (N.D.Cal. 2007) (italics in original).  Here, the results achieved fully warrant the fee request.

First, Class counsel litigated this matter through judgment and recovered 100% of the maximum amount possible - a substantial common fund recovery of $97,284,817.91.

Second, the amount recovered was not just a result of the size of the class but was directly attributable to Class counsel prevailing on their damages theory.  The law on damages was unsettled, but the majority of cases were contrary to Plaintiffs' theory of damages.  Class Counsel prevailing on the damages issue increased the Class award by 4.3 times the amount asserted by Wells Fargo, and resulted in an additional $74,662,010.64 to the Class. (Stevens Decl., ¶ 19(q))(Docket No. 50(I)(C)(12)) .

Third, not only did Class counsel recover a significant aggregate sum, the individual recoveries are exemplary for a class action. The average recovery spread amongst all class members is $21,710.51. (Stevens Decl., ¶19(r)).  More than 700 class members will receive $40,000.00 or more. Id.

Fourth, this action also obtained significant additional benefits not included in the judgment.  Specifically, because of this case, Wells Fargo changed its pay plan, so that pay for rest break time "will not be taken into account" when Wells Fargo deducts hourly advances from commissions. (Stevens Decl., ¶ 21).  This change addresses and stops the larger issue of Wells Fargo not paying for rest break time, and affects all current and future Wells Fargo mortgage employees.  When extrapolated into the future, this

additional relief will at some point equal and then exceed the value of the common fund. The Ninth Circuit has directed that where, as here, Class counsel achieves significant benefits not included in the common fund, the court should consider its value in determining what percentage of the common fund class counsel should receive. Vizcaino, supra, 290 F.3d at 1049. With such consideration, the estimated additional value of $97+ million would increase the total benefits to close to $200 million. Based thereon, Class counsel's fee request, although 25% of the common fund, is essentially 12.5%, or less, of the total benefits created.

Finally, that Class counsel took this case through judgment and achieved 100% of the value of the case stands in stark contrast to the majority of wage and hour class actions, which are settled and provide only a fractional recovery for class members.

For example, a recent California case noted that a settlement that recovers 27% of the value of the case is a "percentage [that] is consistent with the recovery in other wage and hour class actions." Dynabursky v. Alliedbarton Security Services, LP, 2016 WL 8921915, *5 (C.D.Cal. 2016).

As another example, according to a comprehensive study analyzing 613 settlements from January 2007 through March 2015, there has been a decreasing trend since 2011 in the average individual settlement value per wage and hour class action (from $1,475 in 2011 to $686 in 2014 to $253 through 2015). (Stevens Decl., ¶32).

As a final example, the recent Wells Fargo Wage and Hour Cases, in the Superior Court of the state of California, resolved by settlement three putative wage and hour class actions that were filed against Wells Fargo on March 16, 2018. Class members were represented by six law firms. The cases were litigated for 8 years, since 2010. It was estimated that the potential recovery that could have been obtained at trial ranged between $59 million to $98 million. The Court approved a $27.5 million settlement on behalf of approximately 28,463 class members over a class period of 8 years. Class members will receive an average payment of approximately $660, and Class counsel there moved for, and was granted, a 33% award of attorney's fees. (Stevens Decl., ¶24).

In sum, the results in this matter stand in strong contrast to other cases, are exceptional, and therefore support a 25 percent fee.

## 2. The Case Carried Substantial Risks.

Risk is a relevant circumstance.  See Vizcaino, supra, 290 F.3d at 1048.  In evaluating the risk of the litigation, a court may consider the complexity of the legal issues involved. Id. In In Re NCAA, supra, 2017 WL 6040065, the Court noted that even possibly being initially dismissed on the pleadings is a real risk. Id. at *3.

Here, this case carried significant risks from the beginning.  The litigation involved a superior resourced and historically litigious Defendant represented by highly skilled counsel. (See, supra, Wells Fargo Wage and Hour Cases, 8 years of litigation)(Stevens Decl., ¶24).  Indeed, Wells Fargo denied each of Plaintiff's allegations and raised a vigorous defense all the way through trial, and now appeals.  Vaquero v. Stoneledge Furniture, LLC, 9 Cal.App.5th 98 (2017) was not published prior to filing of this action and did not become final until months into the litigation (on June 21, 2017). Wells Fargo took the position Vaquero did not apply to this case. Wells Fargo also asserted that a district court opinion in Nguyen v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS 131710, had already addressed its pay plan and was dispositive on the liability issue, notwithstanding Vaquero.  (Dckt 26, pp.23-24.)  Wells Fargo filed a summary judgment motion as to the Classwide claims. Finally, the proper calculation of damages was unsettled, but the majority of existing precedent was against Plaintiff and Class counsels' position.   Plaintiff and Class counsel faced a substantial risk of recovering four times less than what was ordered.   In sum, each of these risks existed, and had to be overcome.  Moreover, unlike the vast majority of class cases which are settled, Plaintiff and Class counsel pushed to full judgment and still face the risk of Defendant's appeal.  This factor, therefore, strongly supports Class counsels' request.

## 3. The Quality, Skill and Efficiency of Class Counsel.

The effort and skill displayed by counsel and the complexity of the issues involved are additional factors used in determining a proper fee. Vizcaino, 290 F.3d at 1048.  An

- 8 -

enhancement is appropriate when "an exceptional effort produced an exceptional result." Graham v. DaimlerChrysler Corp, 34 Cal.4th 553, 82-83 (2004).

Here, as noted, Class counsel litigated this matter through trial and judgment against a well-resourced and litigious defendant and achieved a substantial common fund recovery.   In so doing, Class counsel prevailed on each issue and achieved a 100% recovery comprising significant individual amounts.

Moreover, the judgment for named Plaintiff and the Class was achieved in significantly less than typical time for a class action.  This case was filed on March 17, 2017, and removed to federal court on June 12, 2017.  It proceeded through discovery, class certification, summary judgment on liability, and trial and judgment on damages, in an efficient result-oriented focus and all in less than a year from the date of this case's June 2017 removal to federal court. (Stevens Decl., ¶19).  As noted, this stands in strong contrast to the majority of wage and hour class actions, which typically take far longer and are settled for a fractional recovery for class members (and typically request 30-33% fee (See .   The speed, efficiency and effectiveness with which this case was prosecuted and the fact that Class counsel prevailed on each issue evidences the exceptional quality and skill of Class counsel's work and justifies a 25% attorney fee.

### 4.    The Contingent Nature of the Fee.

"Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an *enhanced fee* to compensate them for the risk that they might be paid nothing at all for their work." Ching v. Siemens Indus., 2014 WL 2926210, *8 (N.D.Cal. 2014) (italics added).  "This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a *premium* over their normal hourly rates for winning contingency cases." Vizcaino, supra, 290 F.3d at 1051 (emphasis added).   And "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

- 9 -

regardless whether they win or lose." <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1299 (9th Cir.1994).  Indeed, Courts have recognized that if a contingent-fee lawyer was awarded fees at the same level as an hourly-fee lawyer, it would be economically irrational for any lawyer to accept a contingent-fee case because there would be absolutely no incentive to accept the risks inherent in such representation. <u>See</u> Posner, Economic Analysis of Law (4th ed. 1992) pp. 534, 567. As stated in <u>In Re NCAA</u>, <u>supra</u>, 2017 WL 6040065:

> In short, contingent fees are good for clients and the public alike. In exchange for increased predictability, decreased bean counting, and unlimited protection against downside risks—including the risk of a zero dollar recovery—a client agrees to pay its attorneys an enhanced fee if and only if the client recovers. And because contingent fees are almost always determined as a percentage of the client's recovery, ***such fees are necessarily aligned with and proportional to the results achieved*** for that client—in short, the client only pays for what it gets.
>
> ***Lest contingent fees disappear altogether, the law must recognize both sides of the bargain—namely, a significant upside fee for successful contingent representations***. If it instead becomes that lawyers must not only bear all of the downside risk but must also do so only for the prospect of being paid what they would have been paid by the hour, the law will discourage sophisticated counsel from pursuing risky representations on behalf of non-wealthy clients.

<u>Id</u>. at 4 (emphasis added), citing to <u>Vizcaino</u>, <u>supra</u>, 290 F.3d at 1051 ("In common fund cases, 'attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose'").   Here, Class counsel prosecuted this case on a purely contingent fee basis, advancing all attorney time and costs, and risking recovering nothing. (Stevens Decl., ¶¶ 14-18; and Haffner Decl., ¶13.)  Moreover, the risk still exists, as Wells Fargo is appealing.  Thus, the contingent nature of Class counsel's representation supports the benchmark fee award.

**5.     The 25% Benchmark Is Fair And Reasonable To The Absent Class Members.  It Is Below What An Individual Class Member Would Pay In A Standard Contingency Fee Agreement.**

As set forth above, under the common fund theory, the Supreme Court has directed that attorneys' fees should be assessed against every class members' share. Boeing, supra, 444 U.S. 472 at 480.  The purpose of the doctrine is to avoid unjust enrichment by requiring those who benefit from the efforts of the litigants and their counsel to pay a fair share. Laffitte, supra, 1 Cal.5th at 489; Graulty, supra, 886 F.2d at 271.

Here, as noted, individual class members are recovering substantial individual amounts (Stevens Decl., ¶19(r)).  This is especially true when one examines the Class claims and the remedy for a rest break violation.  Here, the Class prevailed on a claim that they were not paid for rest breaks.  In an 8-hour day, Class members were entitled to two, 10-minute rest breaks. Cal. Code Regs., Title 8, § 11040, 4-2001(12)(A).  Wells Fargo's liability to Plaintiff and the other class members under California Labor Code §226.7 and California Business & Professions Code §17200, however, is one additional hour of pay for each qualifying shift in excess of 3.5 hours during the class period ("qualifying work shifts").  (Findings of Fact and Conclusions of Law, Docket No. 50 (C) 9.)   Thus, regardless of how "regular rate of compensation" is calculated, built into damages under §226.7(c) is a three-fold increase (one hour instead of 20 minutes) of the actual loss of pay suffered by an employee, i.e., a "premium" over the actual lost pay. In addition, Wells Fargo's change to its rest break pay policy, which was made following the Court's ruling on liability but prior to the damages order, began to  compensate class members for rest breaks at the hourly advance rate, which was $12 per hour.   The Classwide damage award, however, is based on a regular rate of compensation that includes commissions, which is an additional four times the amount based on the Class member's hourly advance.

This excellent Class recovery was the result of the efforts of Class counsel.  In an individual contingency case with such a recovery, a class member would expect to pay

the market rate which is typically 33-40% of the recovery. <u>See</u> <u>Chavez v. Netflix</u>, supra, 162 Cal. App. 4th at 64 (noting "the 20 to 40 percent range of contingency fee contracts found in the marketplace"); <u>Vizcaino</u>, supra, 290 F.3d at 1049 (involved a retainer at 30% and recognized 28% as at, or below, the market rate); <u>Laffitte</u>, <u>supra</u>, 1 Cal. 5th 480 (the California Supreme Court affirming trial court's finding that the requested fee "amounts to 33 1/3 percent of the gross settlement amount, and is not an atypical contingency agreement in a class action").   It is also the rate Class counsel charges. (Stevens Decl., ¶14; and Haffner Decl., ¶10).   Importantly, the compensation in an individual contingency arrangement would not change whether the case took six (6) months or six (6) years. <u>Id</u>.   Here, the requested 25% benchmark is significantly below what an individual class member would expect to pay in a standard individual contingency fee agreement with such a recovery.   Thus, for this reason as well, an attorney fee at the 25% benchmark is reasonable.

### 6. Comparison to Awards in Other Cases Demonstrates the Fee Requested is Reasonable.

The Ninth Circuit has directed that in determining a reasonable percentage rate, the Court should "examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds *of comparable size*." <u>Vizcaino</u>, <u>supra</u>, 290 F.3d at 1049-50. (emphasis added).   This examination supports Class counsel's request.

With regard to the range of fee awards out of common funds of <u>comparable size</u>, the recent case of <u>In Re NCAA</u>, <u>supra</u>, is instructive.   This case, which looked at "megafund" settlements ($100 million or more), relied on a study of attorneys' fees, known as the EMG Study, which looked at awards in 458 class actions between 2009 and 2013. <u>Id</u>. at 2.   The Court noted that "[o]n average, fees were 27% of gross recovery." <u>Id</u>. The Court noted that the largest recoveries, over $100 million, had mean and median fee percentages ranging from **16.6% to 25.5%**. <u>Id</u>.   The Court further noted

that in the 144 settlements surveyed in the Ninth Circuit, the mean and median awards were **26% and 25%**. Id.  Thus, the Court found:

> "[T]he fact that the average award in mega-fund cases across all subject matters and all locales in 2011 was greater than the 20% fee requested here confirms, like U does, that a 20% fee on a recovery of this size is reasonable and well inside the range of fee awards in comparable common fund cases." Id. at 6.

In terms of the range of fee awards out of common funds of <u>comparable size in a comparable matter</u>, <u>Vizcaino</u> is also notable.  <u>Vizcaino</u> approved a comparable percentage fee amount, in connection with a comparable common fund amount, in a comparable wage and hour action on behalf of employees. <u>Vizcaino</u> awarded 28% in fees on a common fund of nearly $97,000,000.  <u>Vizcaino</u>, <u>supra</u>, 290 F.3d at 1046, 1052. Notably, the request in this case is stronger with respect to benefit achieved for the class, as Class Counsel obtained a 100% recovery, which was achieved through trial, whereas <u>Vizcaino</u> was a compromise settlement and less than full value.

<u>Glass</u>, <u>supra</u>, 2007 WL 221862 is also instructive.  In <u>Glass</u>, the Court evaluated a class settlement of an employment action for overtime and unlawful business deductions, brought on behalf of stockbrokers.  <u>Id.</u> at *1.  The case settled for "a maximum payment of $45,000,000."  <u>Id.</u>  Class counsel requested a fee of 25%, or $11,250,000.  <u>Id.</u> at *1, 15.  The <u>Glass</u> court noted "information from which the Court could calculate lodestar" was not provided, but stated "no litigation activity of substance [occurred] other than the filing of the complaints" and "there can be no doubt that the lodestar would result in a fee substantially lower than the $11,250,000 claimed."  <u>Id.</u> Nevertheless, the <u>Glass</u> Court overruled an objection to the attorneys' fee request as excessive, and awarded the 25% benchmark, stating that "the early settlement . . . resulted in a significant benefit to the class."  <u>Id.</u> at *16.  Thus, <u>Glass</u> is similar to this case in that it involved employment claims, and a significant class recovery that was highly beneficial to the class.  However, Class counsel's fee request in this case is

stronger than the request in Glass. This case was taken through trial, unlike Glass, which settled early. Moreover, the award received in this case was over double that achieved in Glass, although the Glass award was nevertheless substantial.

Finally, empirical data on mean and median percentage awards in common fund wage and hour class actions indicate it is 28.8 percent. 5 Newberg on Class Actions § 15:83 (5th ed.)(Stevens Decl. 26, Exhibit 7). This is consistent with California and district courts within this district. See e.g. Laffitte, supra,1 Cal 5th 480 (2016)(California Supreme Court 33% fee in wage and hour case); Chavez, supra, 162 Cal. App. 4th at 66 n.11 ("fee awards average one-third of the recovery").

In sum, an examination of comparable cases supports the benchmark 25% request.

### 7.    There Is No Reason to Deviate From The 25% Benchmark.

The Ninth Circuit has directed that, typically, only "special circumstances" justify an *upward* or *downward* departure from the 25% benchmark for a reasonable fee award. Bluetooth, supra, 654 F.3d at 942. In making this determination, the Ninth Circuit and other decisions focus on the results to class members and Class counsel's role in achieving those results.

In terms of circumstances justifying a downward adjustment from the benchmark percentage, the Ninth Circuit in Vizcaino and Bluetooth described two scenarios where it may be warranted. First, Vizcaino provided the example "[**w]here such investment is minimal**, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." Vizcaino, supra, 290 F.3d at 1050 (emphasis added). Second, Bluetooth, provided the example "where awarding 25% of a 'megafund' would yield '**windfall profits**' for class counsel in light of the hours spent on the case." Id at 654 F.3d at 942. (emphasis added). Importantly, Bluetooth quoted the following from In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 148 F.3d 283 (3d Cir.1998), which explained that "windfall profits" are predicated on the notion that the size of the common fund was merely a result of class size, not counsel's efforts. The Court explained that the "basis for [the] inverse relationship

between size of fund and percentage awarded for fees is that in many instances **the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.**" Bluetooth, 654 F.3d at 942 (quoting In re Prudential Ins. Co., supra, 148 F.3d at 339) (emphasis added).

In Lealao, supra, the California Court of Appeal also discussed where an adjustment to the fee percentage may be appropriate. Lealao articulated that the issue is about the value of counsels' contribution and held that a higher fee percentage is more justified when class members are receiving larger individual recoveries versus *de minimis* recoveries. Lealao, supra, 82 Cal. App. 4th at 53. The Court explained:

> This case is not one in which the individual recoveries of class members were *de minimis*. As a result of the settlement, named plaintiffs recovered over $6,000; and the average recovery was over $2,000. Thus, whether the benefit to the class resulting from the settlement be considered the $14,780,000 that would be paid if all members presented valid claims, or the $7,350,000 of valid claims processed at the time of the renewed fee application, **the amount would in either case be determined in significant measure by the size of the individual recoveries**, **not just by the size of the class**. The large recovery in this case is thus a more authentic indication of the value of counsel's contribution than might otherwise be true. Id.

Finally, In Re NCAA, supra, 2017 WL 6040065, which involved a $208,664,445 settlement for approximately 53,748 class members for an average class member recovery of approximately $6,000, in rejecting the idea that the requested 20% percentage fee from a megafund was a "windfall", the court stated as follows:

> "[W]hile applying the so-called 'increase-decrease' principle may be appropriate in certain cases, it is tenuous here**, where the size of the fund is not merely a factor of the size of the classes** but is instead directly related to the efforts of plaintiffs' counsel." Id. at 5 (emphasis added).

\\\\

\\\\

The <u>In Re NCAA</u> Court went on to articulate:

> "This is not a mass tort or fraud case in which mere disclosure of a government investigation all but guarantees the creation of a megafund, notwithstanding what counsel does or does not do; **instead, this case went from zero recovery to megafund solely because of counsel's efforts**." <u>Id</u>. at *6 (emphasis added).

Here, none of the examples in <u>Vizcaino</u>, <u>Bluetooth</u>, <u>Lealao</u> or <u>In Re NCAA</u> as to what warrants a downward adjustment apply. Class counsel did not obtain an early settlement with minimal effort. Rather, the case was taken through trial, through complex issues to 100% possible recovery, and will now be appealed.

Moreover, Class counsel did not recover *de minimis* amounts for class members, but recovered significant individual recoveries. (Stevens Decl.¶ 19(r)).

Finally, the size of the fund and individual recoveries are not merely a "windfall" due to the size of the class, but are due to Class counsel pursuing a novel damages theory in an unsettled area of law, and thereby increasing the common fund by over 400%, which resulted in an over $74 million increase to the common fund (from $22,622,807.27 to $97,284,817.91). The results obtained for the Class were thus, directly related to the efforts of Class counsel. Therefore, allowing the amount of the recovery to positively influence the fee is justified, and supports a 25% benchmark award.

## F. The Lodestar-Multiplier "Cross-Check" Is Discretionary And Need Not Be Applied.

The Ninth Circuit has held that the Court may, but is not required, to engage in a lodestar "cross-check" when awarding a fee as a percentage of a common fund. <u>Vizcaino</u>, 290 F.3d at 1050-51. Indeed, California federal courts have expressly held that "[a] lodestar cross-check is not required in this circuit." <u>Craft v. County of San Bernadino</u>, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008.) Multiple other cases from this Circuit have held the same. <u>See</u> <u>Ladore v. Ecolab, Inc.</u>, 2013 WL 12246339, *11 (C.D. Cal. 2013) (Consideration of the foregoing factors strongly supports plaintiffs' request for attorney's fees in the amount of 28% of the common fund. Therefore, the court is

satisfied that a lodestar "cross-check" is not required) (bold added).   Lopez v. Youngblood, 2011 WL 10483569, *14 (E.D.Cal. 2011) ("[a] lodestar cross-check is not required in this circuit, and in a case such as this, is not a useful reference point"); Glass, supra, 2007 WL 221862 at *15 ("The Ninth Circuit has held that the Court may, but is not required to, compare the lodestar and the 25% benchmark to determine if the 25% benchmark results in an inappropriately high or low fee").   The California Supreme Court has held similarly.   Laffitte, supra, 1 Cal.5th at 506 ("trial courts have discretion to conduct a lodestar cross-check on a percentage fee, as the court did here; they also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee).

In Glass, the Court explicitly declined to conduct a lodestar analysis, concluding that, under the circumstances, it "finds no need to conduct a lodestar cross-check [as] class counsel's prompt action in negotiating a settlement while the state of the law remained uncertain should be fully awarded."   Id. at *16.   Glass awarded the full 25% benchmark as attorneys' fees in a $45 million settlement where all that had been done was the filing of complaints.   Id. at *1, 15.

Class counsel submits that based on the above and under the circumstances of this case, and particularly given the benefits achieved for the class, a lodestar crosscheck is unnecessary.

**G.**   **If The Court Exercises Its Discretion To Perform A Lodestar Cross-Check, That Analysis Confirms The Reasonableness Of Class Counsel's 25% Benchmark Fee Request.**

In Vizcaino, the Ninth Circuit directed that the utility of the lodestar cross-check is limited, stating "[t]he lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."   Vizcaino, supra, 290 F.3d at 1050, n.5.

Thus, in contrast to the use of the lodestar method as a primary tool for setting a fee award, "[t]he lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award." <u>Fernandez v. Victoria Secret Stores, LLC</u>, 2008 WL 8150856, *14 (C.D. Cal. 2008). Accordingly, "the lodestar can be approximate and still serve its purpose." <u>Id</u>.

As the Court is aware, the Ninth Circuit has adopted twelve factors a Court should consider in assessing a fee request under the lodestar analysis, known as the "Kerr factors." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998). (citing <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir.1975)). These include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Kerr</u>, <u>supra</u>, 526 F.2d at 70.

The court need not discuss each factor. It is sufficient if the record shows that the court consider[s] the factors called into question by the case at hand and necessary to support the reasonableness of the fee award. <u>Sapper v. Lenco Blade, Inc</u>., 704 F.2d 1069, 1073 (9th Cir. 1983). Many of the <u>Kerr</u> factors overlap with the factors under the percentage-of-recovery method analysis discussed above (i.e. the novelty and difficulty of the questions involved, the skill required, the contingent nature of the fee, and the results obtained). Class counsel hereby refers the Court to the prior discussion on those points and addresses the remaining relevant <u>Kerr</u> factors not already discussed, below.

Finally, the California Supreme Court directed that "we emphasize the lodestar calculation, when used in this manner, does not override the trial court's primary

determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the potential fee award." <u>Laffitte</u>, <u>supra</u>, 1 Cal.5th at 505.

### 1.       The Time And Labor Required.

When evaluating a parties' lodestar, all reasonable and necessary hours are included, including time working on a motion for attorney fees.  <u>Ketchum v. Moses</u>, 24 Cal.4th 1122, 1133 (2001).  In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984).

Here, Class Counsel's combined lodestar for work to date is 1,805 hours for a lodestar amount of $1,304,944.00. (Stevens Decl., ¶28; Haffner Decl., ¶15.)  This is based on reasonable hourly rates for the community.  <u>See e.g.</u>, <u>Roberti v. OSI Systems, Inc.</u>, 2015 WL 8329916, *7 (C.D.Cal 2015) ("Lead Counsel's attorney rates–between $525 to $975–are reasonable"); <u>Campbell v. Best Buy Stores, L.P.</u>, No. 2016 WL 6662719, *9 (C.D. Cal. 2016) (approving rates of $875 and $650 for attorneys in employment case); <u>Aarons v. BMW of N. Am.</u>, No. 11- 7667-PSG, 2014 U.S. Dist. LEXIS 118442, *40-41 (C.D. Cal. Apr. 29, 2014) (based on "the Court's own experience with hourly rates in the Los Angeles area" awarding rates ranging from $775 for the requested partner to $390-$630 for non-partners); <u>Kearney v. Hyundai Motor Am.</u>, No. SACV 09-1298-JST (MLGx), 2013 U.S. Dist. LEXIS 91636, *24 (C.D. Cal. June 28, 2013)(approving hourly rates of $650-$800 for senior attorneys in a class action). In addition, the rates are lower than that of opposing counsel that Class counsel typically faces. (Stevens Decl.,¶ 29).

As noted above, Class counsel prosecuted this case through discovery, class certification, summary judgment on liability, and trial and judgment on damages, with an efficient, result oriented focus.  (Stevens Decl., ¶¶19, 28).   All of the time spent by Class counsel was necessary and reasonable to advance this matter to the judgment obtained.

- 19 -

1    In addition, substantial future work will be necessary in this matter.  The work
2    required after an attorney fee motion is to be heard is relevant in performing the cross-
3    check.

4    "In wage and hour cases, Class Counsel is often called upon to perform
5    work after the final approval hearing. . .  Because class counsel will be
6    required to spend significant additional time on this litigation . . ., the
     multiplier will actually be significantly lower because the award includes not
7    only time spent prior to the award, but after in enforcing the settlement."
     Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013).

8

9    See also In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, And
10   Products Liability Litigation, MDL No. 2672, Dckt 3053, 3/17/17, 8:1-8 (N.D. Cal. May
11   17, 2017) (Court included 21,000 hours and $11 million of "reserved" future lodestar
12   time in attorney fee award to defend and protect settlement on appeal and assist
13   implementation, supervision and guidance of class members through the class settlement
14   agreement); and (Stevens Decl., ¶ 25, Exhibit 6.)

15        Here, the future work includes litigating the appeal of the liability and damages
16   issues, an appeal which Wells Fargo has already filed, as well as work on administration
17   of Class benefits for 4,481 Class members.  Indeed, Class Counsel anticipates working
18   through a complete appellate process.[2]  Here, Class counsel estimates that the amount
19   of time that will be spent on future work (the appeal and post appeal class administration
20   work) will require between 650 to 2,750 hours, or approximately $487,500.00 to
21   $2,062,500.00 worth of attorney time.  (Stevens Decl., ¶¶35-37; Haffner Decl., ¶16.)
22   This would increase the loadstar total to between approximately $1,792,444.00 to
23   $3,367,444.00.  This would still be an exceptionally low lodestar relative to other class
24   cases of this magnitude.
25   \\\\

26

27   [2] In its mediation statement filed with the Ninth Circuit on May 16, 2018 in connection with its
     appeal, Wells Fargo stated **"[t]here is essentially zero chance that Wells Fargo will agree to
28   settle this case at a level that Plaintiff would accept**."  (Ninth Circuit Court of Appeal Case
     No. 18-55626, Dckt No.3, Wells Fargo's Mediation Questionnaire, filed 5/16/18.).

Based on the 25% benchmark fee request divided by the <u>base</u> lodestar, the multiplier would be approximately 18.75.  With future work taken into consideration, it results in a multiplier between **7.2 to 13.5** to reach the 25% benchmark request. <u>Id</u>.

While Class counsel understands this multiplier is higher than average, as set forth in more detail in the next section, there is precedent for it, and this is amongst the rare cases where it is warranted.

## 2.      The Requested Fee Is Reasonable When Compared To Fees In Similar Litigation.

A review of the sixth and eighth <u>Kerr</u> factors—the customary fee and awards in similar cases - supports the fee request.

In <u>In Re NCAA</u>, the Court noted that the Ninth Circuit in <u>Vizcaino</u> cited, in support of its analysis, to cases with "common funds of nearly equivalent size," that awarded multipliers as high as **19.6**. <u>In Re NCAA</u>, <u>supra</u>, 2017 WL 6040065 at \*6.  Other case law support a double digit multiplier under the circumstances of this case.  <u>See e.g.</u>, <u>Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.</u>, 2005 WL 1213926, \*18 (E.D.Penn. 2005) (awarding 20% of $100 million, which was a **15.6** multiplier).    In <u>Glass</u>, <u>supra</u>, 2007 WL 221862, \*15 (N.D.Cal. 2007), as previously noted, the Court awarded 25%, or $11,250,000, and noted "no litigation activity of substance [occurred] other than the filing of the complaints." <u>Id.</u>  A generous estimate of the time to do the work noted by the court - <u>i.e.</u> to draft complaints - would be a multiplier in the **28 to 65** range (<u>i.e.</u>, 200 to 500 hours to draft complaints at $750/hr).  As stated by the Court in <u>In Re NCAA</u>, <u>supra</u>, "higher multipliers are associated with higher recoveries."  <u>In Re NCAA</u>, <u>supra</u>, 2017 WL 6040065 at \*6.  <u>See also</u> <u>Mashburn v. National Healthcare</u>, 684 F.Supp. 679, 689 (M.D. Ala. 1988)("A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; **many a patient would think he is entitled to more**.").

Finally, under California law, the California Supreme Court has directed that "the lodestar calculation, when used in this manner, does not override the trial court's primary

determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the potential fee award." Laffitte, supra, 1 Cal.5th at 505.   Under California law, a percentage calculation may be used to determine a lodestar multiplier and at an amount counsel would otherwise have obtained under a contingency fee contract found in the marketplace. Id. at 502, citing Lealao, supra, 82 Cal.App.4th at 45 and noting a 33% rate; See also Chavez, supra, 162 Cal.App.4th 43, 63 (under reasoning of Lealao, not an abuse of discretion "for the trial court to apply a percentage figure at the low end of the typical contingency contractual arrangement (21.8 percent) to calculate the multiplier").   Finally, and as noted in Chavez, supra, "[e]mpirical studies show that, **regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery**." Chavez, supra, 162 Cal.App.4th at 63.  (emphasis added)

Here, Class Counsel obtained an exceptional result in significantly less than typical time.  A larger multiplier would thus be the function of Class counsel being more effective than typical and properly aligning Class Counsel's time and multiplier, with the results.  As indicated above, a multiplier commensurate with the 25% benchmark would be entirely consistent with California and Ninth Circuit law, and justified.   When considering further that the attorney fee percentage being requested is effectively reduced by approximately half if the benefits that are not part of the common fund (i.e., the change in Wells Fargo's rest break practices) are taken into account, such a multiplier commensurate with 25% of the common fund is further justified.

### 3. The Preclusion of Other Employment Due To The Case

A lodestar enhancement also is appropriate when taking on a case proves to require a significant percentage of a law firm's resources and time. See Amaral v. Cintas Corp. No.2, 163 17 Cal.App.41 1157, 1218 (2008).

As indicated, Class counsel is comprised of two small law firms.  The time spent on this matter prevented work on other matters and prevented acceptance of other potentially lucrative matters.  (Stevens Decl., ¶38; Haffner Decl., ¶9.)  Future work on

Wells Fargo's appeal will demand further time and preclusion from other fee earning work.  Accordingly, this element applies and further supports Class counsel's position.

## IV.    Class Counsel's Litigation Costs Should Be Reimbursed.

In prosecuting this case, Class Counsel has incurred $66,560.50 in necessary litigation expenses. (Stevens Decl., ¶¶39, 40, 41; Haffner Decl., ¶17.) Class Counsels' reasonable non-statutory expenses, i.e., those that would ordinarily be billed to a fee-paying client, including expert fees, are recoverable from the fund. See In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362 , 1366 (N.D. Cal. 1996) (reasonable expenses incurred by an attorney who creates a common fund are reimbursed proportionately by those class members who benefit.").

Here, $4,346 in taxable costs were submitted to the Court, without objection (Docket No. 58).  The remaining $62,214.50 in expenses would be billed to a fee-paying client.  These non-taxable and supporting documentation are set forth in detail in the Joint Statement of Costs filed concurrently with this motion. (Stevens Decl., ¶¶32, 33). Plaintiffs respectfully submit those expenses are reasonable.

## V.    The Requested Service Award Is Reasonable and Appropriate.

From the common fund, Class Counsel asks the Court to award a service award of $100,000.00 for the class representative, Jaqueline Ibarra.

The Court has discretion to grant incentive awards, guided by the following considerations: (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294 , 299 (N.D. Cal. 1995). "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant reputational risk by bringing suit against their former employers." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 265 (N.D.Cal. 2015).

The requested award of $100,000.00 for the Class representative constitutes one tenth of one percent of the common fund amount. (Stevens Decl., ¶45). In addition, Ms. Ibarra's restitution\damages award is less than the amounts that more than 1,200 Class members are to receive (approximately 26% of the Class), and in some cases, significantly so. Id. Ms. Ibarra is the sole named plaintiff in this action. (Id. at ¶42). Ms. Ibarra risked significant reputational damage by initiating this action. Class Counsel spoke to several class members who applauded Ms. Ibarra for bringing this action, and stated they would not have done so. Id. Notably, Ms. Ibarra also actively assisted counsel in this action, including conferences with counsel, assisting in the preparation of discovery responses, encouraging current and former co-workers to speak with counsel, providing declarations, sitting for deposition, and preparing for trial. (Ibarra Decl., ¶¶7-15.) Ms. Ibarra's declaration shows a high level of involvement. Moreover, Ms. Ibarra was also instrumental in the result achieved. (Stevens Decl., ¶¶44). Specifically, Ms. Ibarra produced and explained the Distributed Retail Commission Reports. Id. Wells Fargo did not produce these reports in discovery. Id. These monthly reports were critical in establishing Wells Fargo's rest break violation. Id.

Given Plaintiff's efforts on behalf of the class, the amounts involved, and results obtained, the Class counsel submit that it would be appropriate to grant the request for incentive award, in the amount of $100,000.00 to named plaintiff.

## VI.  CONCLUSION

Awarding fees as a percentage of the fund is consistent with California and Ninth Circuit authority.  Doing so also aligns the interests of Class Counsel and absent Class Members in achieving the maximum possible resolution. As set forth herein, the Class Members in this matter are recovering significant sums of money for their claims.  This is not by chance, but rather is because Class Counsel fought for and created a common fund of the size here.  The amount requested is therefore reasonable and consistent with the effort expended and the outcome achieved for the Class Members.

Therefore, Class Counsel respectfully submits that all of the relevant factors weigh in favor of awarding fees in the amount of 25% of the common fund and respectfully request that this Court grant their motion and award attorneys' fees, expenses, and service awards, as requested.

Respectfully submitted.

DATED:  June 18, 2018                    **HAFFNER LAW PC**

                                         By:  /s/ Joshua H. Haffner
                                              Joshua H. Haffner
                                              Graham G. Lambert

DATED:  June 18, 2018                    **STEVENS, LC**

                                         By:   /s/ Paul D. Stevens
                                              Paul D. Stevens

                                              Attorneys for Plaintiff and the Class