UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is a Motion for an Award of Attorneys' Fees and Costs and Awarding Class Representative Service Award (Docket No. 62) filed by plaintiff Jacqueline Ibarra ("Plaintiff") and her counsel. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for October 1, 2018 is vacated, and the matter taken off calendar.

**I.      Background**

Plaintiff commenced this action in the Los Angeles County Superior Court on March 17, 2017, alleging various wage and hour violations under California state law on the part of defendant Wells Fargo Bank, N.A. ("Defendant"). (Docket No. 1-2.) Defendant removed the action to this Court on June 12, 2017. (Docket No. 1.) On July 21, 2017, the parties stipulated to the dismissal of all claims in the operative First Amended Complaint except a claim for failure to provide or compensate for rest breaks and a related claim for violation of California's Unfair Competition Act. (Docket No. 17.) The parties also stipulated to the certification of a class under Federal Rule of Civil Procedure 23(b)(3), of which Plaintiff is a member, defined as

> [a]ll non-exempt employees for Wells Fargo who at any time during the period from March 17, 2013 to August 1, 2017 worked for Wells Fargo in California in the job titles of Home Mortgage Consultant, Home Mortgage Consultant, Jr., Private Mortgage Banker, or Private Mortgage Banker, Jr and were subject to the common compensation plans during this period . . . .

(Id.) On July 25, 2017, the Court granted the parties' stipulations and certified the class (the "Class"). (Docket No. 18.)

On November 9, 2017, the parties filed cross-motions for summary judgment based on stipulated facts. (Docket Nos. 25-27.) On January 19, 2018, the Court granted Plaintiff's motion and denied Defendant's motion, concluding that Defendant's compensation system for Class members violated California law requiring compensation for missed rest breaks. (Docket No. 35.) The parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

subsequently stipulated to additional facts upon which the Court would base its ruling on damages. (Docket No. 38.) On May 8, 2018, the Court entered judgment in favor of Plaintiff and the Class in the amount of $97,284,817.91. (Docket Nos. 50-51.)

Plaintiff and her counsel filed their Motion on June 18, 2018. Notice of a motion for attorneys' fees in a class action "must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1); see In re Mercury Interactive Corp. Sec. Litig., 618 F.3d 988, 993-95 (9th Cir. 2010). Accordingly, on July 26, 2018, the Court set a schedule for notice of the motion to be served on Class members, for Class members to file objections, and for Plaintiff's counsel to respond to any objections. (Docket No. 68.) Pursuant to that schedule, on September 11, 2018, the appointed class administrator filed a declaration attaching the sole objection that it had received from a Class member. (Docket No. 71.) Plaintiff's counsel filed a response to the objection on September 17, 2018. (Docket No. 72.)

In their Motion, Plaintiff and her counsel seek $24,321,204.00 in attorneys' fees; $62,214.50 in expenses; and a $100,000.00 service award for Plaintiff, all to be paid out of the Class's recovery. (Mot. at 2; see Mem. P. & A., Docket No. 62.)

**II.    Attorneys' Fees**

Counsel seek $24,321.204.00 in attorneys' fees, or 25% of the judgment amount. (Mot. at 2; Mem. P. & A. at 1-23.) Counsel contend that this award is supported by the exceptional results that they achieved for the Class; the substantial risks that they undertook; the fact that they took this case on a contingent-fee basis; the fact that individual Class members would normally agree to a higher percentage in a standard contingency-fee agreement; awards in other cases; the amount of work that they performed and will perform; and the preclusion of other work due to this case. (Mem. P. & A. at 5-14, 19-23; see Stevens Decl. ¶¶ 13-20, 22-38, Docket No. 62-1; Haffner Decl. ¶¶ 9-15, Docket No. 62-2.)

In the objection submitted by the class administrator, a Class member states that "as a participant in obtaining an award from this lawsuit I feel 25% of a judgment of this amount is way out of hand for counsel to receive. I'm not going to say what amount is, but I will say that a fare and honest figure, I hope is awarded" by the Court. (Docket No. 71.) Counsel contend that the submission of an objection by one Class member out of 4,464 supports an award in the requested amount. (Docket No. 72 at 2-3). They also argue that the objection does not provide a basis for any downward adjustment from their requested amount. (Id. at 4-7.) One of Plaintiff's counsel submits a declaration stating that "[s]ince notice to the Class of Class counsel's Motion, I have been contacted directly, by telephone or email, by 67 Class Members. . . . Each of the 67 Class Members communicated gratitude to me for the work and efforts of Class counsel and the Orders of the Court, and expressed well wishes for the remaining appeal. Not one expressed any negativity toward any aspect of this matter or the Motion." (Docket No. 72-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

**A.    Legal Standards**

"When a case results in a common fund for the benefit of a plaintiff class, a court may exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund." State of Florida v. Dunne, 915 F.2d 542, 544-45 (9th Cir. 1990) (citing Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980)).  However, the Court must carefully review the reasonableness of the requested attorneys' fees.  "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."  In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS"), 19 F.3d 1291, 1302 (9th Cir. 1994).

In common fund cases, "the district court has discretion to use either a percentage or lodestar method."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) (citing WPPSS, 19 F.3d at 1295).  "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee."  Id. (citing Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989)).  The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees."  Id. (citing Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  But "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

"Under the lodestar method, the court multiplies a reasonable number of hours by a reasonable hourly rate.  There is a 'strong presumption' that the lodestar figure represents a reasonable fee."  Fischel v. Equitable Life Assurance Soc'y of the U.S., 307 F.3d 997, 1006-07 (9th Cir. 2002) (footnote omitted) (citations omitted).  "The court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee."  WPPSS, 19 F.3d at 1294 n.2 (citing Blum v. Stenson, 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  In determining whether a lodestar award is appropriate, courts consider the following factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  Fischel, 307 F.3d at 1007 n.7 (quoting Quesada v. Thomason, 850 F.2d 537, 539 n.1 (9th Cir. 1988)).

Even if a court awards attorneys' fees as a percentage of the judgment, "[c]alculation of the lodestar . . . provides a check on the reasonableness of the percentage award."  Vizcaino, 290 F.3d at 1050.  "The lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate . . . .'"  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011) (quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 n.40 (3d Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

1995)). "Where [the lawyers' investment of time in the litigation] is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." Vizcaino, 290 F.3d at 1050.

**B.      25% Benchmark Award**

This case was resolved through litigation rather than settlement, and Plaintiff prevailed in full as to liability and damages. Additionally, the case bore some risk for counsel, who took the case on a contingency-fee basis and who assert that their representation in this case precluded other employment. However, multiple factors suggest that the large 25% benchmark award that counsel requests would not be appropriate. Both liability and damages issues were resolved on the papers based on stipulated facts. Neither removal to this Court, which Plaintiff did not contest, nor class certification resulted in extended Court proceedings. Although counsel should not be penalized for efficient and effective representation, they also should not unduly benefit from factors beyond their own performance.

Counsel suggest that the Court forego a lodestar cross-check of their requested award (Mem. P. & A. at 16-17), but the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their [attorneys' fee] calculations against a second method." Bluetooth Headset, 654 F.3d at 944-45 (citing Vizcaino, 290 F.3d at 1050-51; GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d at 820). The lodestar amount here is $1,304,944.00. (Mem. P. & A. at 19; Stevens Decl. ¶ 28; Haffner Decl. ¶¶ 13-15.) Counsel's requested award is approximately 18.75 times the lodestar amount, although counsel estimate that the multiplier is between 7.2 and 13.5 when future work is taken into consideration. (Mem. P. & A. at 21.) Any of those multipliers is much larger than is common in cases with comparable judgments. See, e.g., Vizcaino, 290 F.3d at 1046-52 (affirming fees award of 28% of $96,885,000 settlement fund, or $27,127,800, where lodestar multiplier was 3.65); In re Optical Disk Drive Prods. Antitrust Litig., No. 3:10-md-2143 RS, 2016 WL 7364803, at *6-10 (N.D. Cal. Dec. 19, 2016) (approving fees award of 25% of $124.5 million settlement fund, or $31,125,000, where lodestar multiplier was 1.29); see also Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) (stating that "[m]ultipliers of 1 to 4 are commonly found to be appropriate in complex class action cases"). The lodestar cross-check confirms that the award that counsel seek is excessive. See WPPSS, 19 F.3d at 1297-98 (stating that "[b]ecause a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this," where there was a $687 million settlement fund.); In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig., MDL No. 2672 CRB (JSC), 2017 WL 1352859, at *2-4 (N.D. Cal. Apr. 12, 2017) (rejecting percentage-based attorneys' fees award that would have resulted in a lodestar multiplier of 19).

"[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." Bluetooth Headset, 654 F.3d at 942-43 (citing Six Mexican Workers, 904 F.2d at 1311; In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

1998)). The Court finds that awarding 25% of the judgment to counsel would result in a windfall and therefore uses the lodestar method to determine an appropriate attorneys' fees award.

      **C.**      **Lodestar Calculation**

As noted above, the lodestar calculation would result in a fees award of $1,304,944.00. (Mem. P. & A. at 19; Stevens Decl. ¶ 28; Haffner Decl. ¶¶ 13-15.)

The billing records and other information submitted by Plaintiff's counsel provide the following billing rates: $775/hour for co-lead counsel Joshua H. Haffner, who has 22 years of experience and who has served as class counsel in numerous class actions, including in wage-and-hour cases; $725/hour for co-lead counsel Paul D. Stevens, who has 18 years of experience and who also has served as lead class counsel in numerous class actions; $550/hour for Andrew Kubik, an attorney with 12 years of experience who works with Mr. Stevens; $350/hour for Graham G. Lambert, an associate attorney who works with Mr. Haffner and who has worked on class actions since becoming an attorney in 2015; and $175/hour for Praveeta Garcia, a paralegal with 13 years of experience. (Haffner Decl. ¶¶ 3-8, 13-16; Stevens Decl. ¶¶ 4-12, 28.) Counsel submit declarations asserting that these rates are reasonable and are comparable to those approved in similar cases by courts in this District. (Haffner Decl. ¶ 13; Stevens Decl. ¶ 29.) The Court finds that these rates are reasonable. See, e.g., Campbell v. Best Buy Stores, L.P., No. LA CV12-07794 JAK (JEMx), 2016 WL 6662719, at *9 (C.D. Cal. Apr. 5, 2016) (finding, in wage-and-hour class action, that hourly rates between $375 and $875 for attorneys were reasonable).

Plaintiff's counsel spent a total of 1,805.55 hours through the filing of their Motion: 690.6 hours by Mr. Haffner; 1,006.95 hours by Mr. Stevens; 25.2 hours by Mr. Kubik; 64.8 hours by Mr. Lambert; and 18 hours by Ms. Garcia. (Haffner Decl. ¶¶ 13-15; Stevens Decl. ¶¶ 28-29; Docket No. 62-4.) However, time entries totaling 226.5 hours relate to work on this Motion either in whole or in part (13.6 hours by Mr. Lambert, 68.5 hours by Mr. Haffner, and 144.4 hours by Mr. Stevens). (See Docket No. 62-4 at 9, 17-18, 81-86.) Some entries combine work on this Motion with other tasks. The Ninth Circuit has made clear that "[t]ime spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." WPPSS, 19 F.3d at 1299 (citing In re Nucorp Energy, Inc., 764 F.2d 655, 661 (9th Cir. 1985); City of Detroit v. Grinnell Corp., 560 F.2d 1093, 1102 (2d Cir. 1977); Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 110-11 (3d Cir. 1976) (en banc)). The Court therefore deducts those 226.5 hours.

Additionally, 65.5 hours were spent traveling (40 hours for Mr. Haffner and 25.5 for Mr. Stevens). (See Docket No. 62-4 at 13, 17, 43, 44, 79.) Some time entries are devoted entirely to travel, while others combine traveling with other tasks but do not apportion time between them. There is no indication that work on the case was performed during travel. Although attorneys may be compensated for reasonable travel time at their normal rates, reductions may be warranted under the circumstances. See WPPSS, 19 F.3d at 1298-99 (upholding district court's reduction by half of attorneys' travel time on basis that "the distractions associated with travel, especially after a full day of work, likely reduced the attorneys' effectiveness while en route"); Etter v. Thetford Corp., Nos. SACV 13-00081-JLS (RNB),

Case 2:17-cv-04344-PA-AS Document 74 Filed 09/28/18 Page 6 of 9 Page ID #:1536

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

SACV 14-06759-JLS (RNB), 2017 WL 1433312, at *5 (C.D. Cal. Apr. 14, 2017) ("The Ninth Circuit has held that district courts have discretion to reduce travel time by half, and the Court finds such a reduction appropriate based on the near certainty that the attorneys did not fully spend their time performing legal work that benefited the class." (citations omitted)). Because it is not clear that counsel spent travel time working and because counsel fail to distinguish between time spent traveling and doing other tasks, the Court in its discretion reduces by half the time recorded as including travel.

The 1513.55 hours remaining after the foregoing deductions still appear excessive in light of the streamlined nature of this case. "The Ninth Circuit has explained that a district court may, in awarding fees based on a lodestar calculation, 'impose a small reduction, no greater than 10 percent—a "haircut"—a based on its exercise of discretion and without a more specific explanation.'" Viceral v. Mistras Grp., Inc., No. 15-cv-02198-EMC, 2017 WL 661352, at *4 (N.D. Cal. Feb. 17, 2017) (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008)). The Court finds that such a reduction is appropriate here and reduces each time-biller's time by 10% after making the foregoing deductions, resulting in the following totals: 523.89 hours for Mr. Haffner; 753.35 hours for Mr. Stevens; 22.68 hours for Mr. Kubik; 46.08 hours for Mr. Lambert; and 16.2 hours for Ms. Garcia.

Using these totals, the lodestar amount is $983,626.88. "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. Foremost among these considerations, however, is the benefit obtained for the class." Bluetooth Headset, 654 F.3d at 942-43 (citations and internal quotation marks omitted); see Staton v. Boeing Co., 327 F.3d 938, 968 (9th Cir. 2003). "Although the range of multipliers used by district courts in common-fund cases varies widely, an overwhelming majority of district courts have used between 1.0-4.0 as the multiplier." Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 WL 4570190, at *2 (N.D. Cal. Dec. 21, 2007) (citing Vizcaino, 290 F.3d at 1047-51). "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." Miller v. CEVA Logistics USA, Inc., No. 2:13-cv-01321-TLN-CKD, 2015 WL 4730176, at *9 (E.D. Cal. Aug. 10, 2015) (citing Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294 (N.D. Cal. 1995)).

Here, the case was litigated to judgment, and Plaintiff prevailed in full on both liability and damages. Counsel took the case on a contingency-fee basis and were unable to undertake other representations due to their involvement in this case. The case therefore bore some risk for Plaintiff's counsel, although "given the skill and experience of these attorneys in this field, they were in a position to assess the risks and potential rewards of undertaking this matter at the time that they agreed to the contingent representation of the putative class." Sanchez v. HVM LQ Mgmt., LLC, No. SA CV11-00123 JAK (PJWx), 2012 WL 13018544, at *3 (C.D. Cal. Sept. 26, 2012). Finally, counsel obtained a sizable judgment and also provided benefits to the Class beyond the damages award: Defendant apparently has altered its compensation system in light of this case. (See Stevens Decl. ¶ 21.) Each of these factors weighs in favor of applying a positive multiplier.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

The Court is not persuaded that the lack of substantial objection by Class members merits much weight, as the Court is applying a lodestar calculation and the Court must balance Class members' opinions with the other relevant factors. See Fischel, 307 F.3d at 1007-08. In this case, various factors suggest that a lower multiplier is appropriate. Again, the Class was certified pursuant to the parties' stipulation, and both liability and damages were resolved on the papers on the basis of stipulated facts. The Court reiterates that counsel should not be penalized for litigating this case efficiently, but they also should not be unduly compensated for a litigation that was greatly simplified through the cooperation of opposing counsel and as a result of the case's relative factual simplicity. This case was neither lengthy nor overly complex. Finally, the risks that Counsel undertook are accounted for to some degree by their hourly rates, which, though reasonable, are on the higher end.

In light of all of these considerations, the Court finds that a multiplier of 2.0 is appropriate. This multiplier is within the range most commonly applied in class actions resulting in common fund judgments. Furthermore, a multiplier of 2.0 adequately accounts for the benefits provided to the Class, the degree of success that counsel achieved, the risks that counsel bore, and the difficulty in litigating this case that counsel faced. Applying this multiplier, the Court concludes that counsel are entitled to an award of $1,967,253.76 in attorneys' fees to be paid out of the Class's common fund recovery. Considering the results achieved, the time expended, the risk of litigation, the skill required, the quality of work, the contingent nature of the fee, the financial burden on Class counsel, and awards made in similar cases, as well as the lack of substantial objection from the Class, the Court finds that an attorneys' fees award of $1,967,253.76 is reasonable.

### III. Nontaxable Costs

Counsel seek $62,214.50 in expenses to be paid from the common fund judgment. (Mot. at 2; Mem. P. & A. at 23.) Counsel have submitted declarations as well as documentation supporting the various expenses, although counsel's itemized statement of expenses totals only $61,523.50. (Stevens Decl. ¶¶ 39-41; Haffner Decl. ¶ 17; Docket No. 62-4 at 88-115.) The expenses include fees for a damages expert, fees for notice to the Class, the Class's share of the mediator's fee, travel expenses, and printing costs. (See Stevens Decl. ¶ 40; Docket No. 62-4 at 88-15.)

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund. To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 265 (N.D. Cal. 2015) (citation and internal quotation marks omitted). However, expenses which should be considered part of an attorney's overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. See In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

    The expenses that counsel seek to have reimbursed from the common fund are of the type that courts typically allow. See, e.g., Rutti v. Lojack Corp., No. SACV 06-350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012). As noted above, counsel's documentation indicates that they paid only $61,523.50 in expenses. Counsel's itemized list of expenses includes an entry for a $2,950.00 payment on June 13, 2018 to Torrey Partners, LLC, but the supporting documentation indicates that only $2,925.00 was charged. (Docket No. 62-4 at 88, 104.) The Court therefore deducts $25.00 from the itemized total. The Court otherwise concludes that the expenses are reasonable and awards Plaintiff's counsel $61,498.50 in nontaxable costs from the Class judgement.

**IV.  Class Representative Service Award**

    Plaintiff seeks a service award in the amount of $100,000.00 to be paid from the common fund judgment, which is one-tenth of one percent of the judgment amount. (Mot. at 2; Mem. P. & A. at 2, 23-24; Stevens Decl. ¶ 45.) Plaintiff argues that she is the only named plaintiff and that her damages award is less than that of 1,200 Class members, in some cases significantly so. (Mem. P. & A. at 24; see Stevens Decl. ¶ 45; Ibarra Decl. ¶ 8, Docket No. 62-3.) Plaintiff asserts that she risked significant reputational damage by initiating this action, stating that Class counsel spoke to several Class members who applauded Plaintiff for bringing this action and who stated they would not have done so. (Mem. P. & A. at 24; see Stevens Decl. ¶ 42.) In her declaration, Plaintiff states that she

> accepted the potential risk explained to me by counsel of perhaps being liable for my employer's costs and perhaps even its attorney's fees if we were unsuccessful in this lawsuit. In addition, I know that the mortgage industry is connected community, and I worried about getting black-balled from being able to work somewhere else as a mortgage broker. This was a significant concern as my family depends on my employability. I started my involvement in this case prior to leaving Wells Fargo and since leaving the company, I discovered first hand about the stigma of being involved in a case against an employer. It has been a hurdle for me to deal with and one I imagine that I will continue to have to deal with in the future.

(Ibarra Decl. ¶ 7.) Plaintiff also argues that she was highly involved in the case and actively assisted counsel, including meeting with counsel, assisting in preparing discovery responses, encouraging coworkers to speak with counsel, fielding communications from Class members, providing declarations, sitting for a deposition, and preparing for trial. (Mem. P. & A. at 24; see Stevens Decl. ¶ 43; Ibarra Decl. ¶¶ 9-17.) Finally, Plaintiff argues that she was instrumental in the successful judgment, asserting that she produced and explained documents that Defendant did not produce in discovery that were critical in establishing Defendant's liability. (Mem. P. & A. at 24; see Stevens Decl. ¶ 44; Ibarra Decl. ¶ 11.)

    "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. However, the district court must evaluate such awards individually to detect "excessive payments to named class members." Staton, 327

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-4344 PA (ASx) | Date | September 28, 2018 |
|---|---|---|---|
| Title | Jacqueline F. Ibarra v. Wells Fargo Bank, N.A., et al. | | |

F.3d at 975; see Radcliffe v. Experian Info. Sols., Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). Courts may consider the following criteria in determining whether to make an incentive award: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit enjoyed by the class representative as a result of the litigation. Van Vraken, 901 F. Supp. at 299. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 977.

Courts have indicated that "[i]ncentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." Bellinghausen, 306 F.R.D. at 267 (citing Rodgriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009)). The Court finds that an incentive award is appropriate in this case in light of Plaintiff's assistance to counsel and the risks that she undertook in bringing this lawsuit. However, as counsel acknowledges (Stevens Decl. ¶ 45), the $100,000 that Plaintiff seeks greatly exceeds the amounts that courts typically award. See, e.g., McNeal v. RCM Techs. (USA), Inc., No. 2:16-cv-05170-ODW-SS, 2017 WL 2974918, at *1 (C.D. Cal. July 12, 2017) (awarding $10,000); Bellinghausen, 306 F.R.D. at 266-68 (noting that "a $5,000 payment is presumptively reasonable" and that "[i]ncentive awards typically range from $2,000 to $10,000"). In the circumstances of this case, the Court finds that a service award of $10,000 is appropriate.

## Conclusion

For the foregoing reasons, the Motion for an Award of Attorneys' Fees and Costs and Awarding Class Representative Service Award (Docket No. 62) filed by Plaintiff and her counsel is granted in part and denied in part. Plaintiff's counsel are awarded $1,967,253.76 in attorneys' fees and $61,498.50 in nontaxable costs to be paid out of the common fund judgment. Plaintiff is awarded a representative service award in the amount of $10,000 to be paid out of the common fund judgment.

IT IS SO ORDERED.